Exhibit A

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _CL 24 - 5057_
(CLERK'S OFFICE USE ONLY)

City of Norfolk _____ Circuit Court

Jamie Vinson, Administrator of the
Estate of Philemon S. Vinson
PLAINTIFF(S)

v./In re: _____

Wellpath LLC et al.,
DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Counterclaim
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
  [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[X] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

## ADMINISTRATIVE LAW
[ ] Appeal/Judicial Review of Decision of (select one)
  [ ] ABC Board
  [ ] Board of Zoning
  [ ] Compensation Board
  [ ] DMV License Suspension
  [ ] Employee Grievance Decision
  [ ] Employment Commission
  [ ] Local Government
  [ ] Marine Resources Commission
  [ ] School Board
  [ ] Voter Registration
  [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
[ ] Adoption
  [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
  [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
  [ ] Complaint – Contested*
  [ ] Complaint – Uncontested*
  [ ] Counterclaim/Responsive Pleading
  [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
  [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
  [ ] Guardian/Conservator
  [ ] Standby Guardian/Conservator
  [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
  [ ] Impress/Declare/Create
  [ ] Reformation
[ ] Will (select one)
  [ ] Construe
  [ ] Contested

## MISCELLANEOUS
[ ] Amend Birth/Death Certificate
[ ] Appointment (select one)
  [ ] Church Trustee
  [ ] Conservator of Peace
  [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
  [ ] Reinstatement pursuant to § 46.2-427
  [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
  [ ] Correct Erroneous State/Local
  [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[X] Damages in the amount of $ 4,200,000.00 are claimed.

4/29/2024
DATE

[ ] PLAINTIFF  [ ] DEFENDANT  [X] ATTORNEY FOR  [X] PLAINTIFF [ ] DEFENDANT

Kevin A. Hoffman, Esquire
PRINT NAME

Singer Hoffman, LLC
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

1209A Laskin Road, Virginia Beach, VA 23451

kevin.hoffman@singerhoffman.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 02/23

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

*(stamp)* FILED APR 29 2024 NORFOLK CIRCUIT COURT CLERK BY _____ D.C.

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

Plaintiff,

v.

Case No.: CL24·5057

WELLPATH LLC,

JURY TRIAL DEMANDED

     Serve at:    Corporate Creations Network Inc.
                      425 W Washington Street, Suite 4
                      Suffolk, Virginia 23434

SHARON WELLS,

     Serve at:    258 Harrier Street
                      Virginia Beach, Virginia 23462

and

ANNE PURKERSON,

     Serve at:    Hilltop Counseling
                      1604 Hilltop West Executive Center, Suite 319
                      Virginia Beach, Virginia 23451

     Defendants.

## COMPLAINT

COMES NOW, the Plaintiff, JAMIE VINSON, Administrator of the ESTATE OF

PHILEMON S. VINSON ("Plaintiff"), by and through her undersigned counsel, for her

Complaint against the above-named corporation and persons (collectively referred to herein as

"Defendants") and states as follows:



APR 29 2024

NORFOLK CIR     CLERK
BY                 D.C.

## I.    PARTIES, JURISDICTION & VENUE

1.     Plaintiff, at all times relevant to this Complaint, was a resident of the City of Norfolk, Virginia. Plaintiff is the mother of Philemon Vinson ("Mr. Vinson") and is duly appointed as the Administrator of the Estate of Philemon S. Vinson ("the Estate").

2.     The statutory beneficiaries of the Estate are Mr. Vinson's wife, Kaitlyn, and his three natural born children.

3.     Defendant Wellpath LLC ("Wellpath") was at all times relevant to this Complaint a Delaware limited liability company, registered to do business in the Commonwealth of Virginia ("Virginia"), with its principal place of business in Nashville, Tennessee.

4.     Defendant Sharon Wells ("Ms. Wells") was at all times relevant to this Complaint a nurse licensed to practice in Virginia and a resident of Virginia. In Mr. Vinson's medical records, Ms. Wells is referred to as Sharon Rice.

5.     Throughout her care and treatment of Mr. Vinson, Wellpath employed Ms. Wells and she was acting within the course and scope of that employment.

6.     Defendant Anne Purkerson ("Ms. Purkerson") was, at all times relevant to this Complaint, a licensed professional counselor licensed to practice in Virginia and a resident of Virginia.

7.     During the time period at issue in this case, Wellpath served as an independent contractor for the City of Norfolk, providing medical services to the various residents of the Norfolk City Jail. Wellpath also employed various other medical and mental health providers referenced herein and/or involved with Mr. Vinson's care.

8.      Venue is proper in this jurisdiction pursuant to Virginia Code § 8.01-262 because

multiple defendants regularly conduct substantial business activity here in a way that creates a

practical nexus with this cause of action and because this is where the cause of action arose.

## II.     FACTUAL ALLEGATIONS

9.      On the evening of Sunday, August 14, 2022, Mr. Vinson was taken into custody

for failing to appear in court for a misdemeanor offense. He was 24 years old.

10.     By all known accounts, Mr. Vinson was sober and compliant with the arresting

officers throughout the process of his detention and booking.

11.     Upon arrival at the Norfolk City Jail, Mr. Vinson willingly submitted to a

"Receiving Screening" that was administered by Ms. Wells. Throughout the screening he was

noted to have behaved appropriately and spoken clearly.

12.     The Receiving Screening included a section entitled "Mental Health and Suicide

Risk Screening." At the conclusion of this section, the screening form indicates, in bold red font,

that: "**A 'YES' response to any Questions 10, 13, 14, 15, 17, 18: place on suicide watch &**

**STAT referral to MHP**."

13.     Question 10 on the Mental Health and Suicide Risk Screening asks if the patient

has "feelings that there is nothing to look forward to or feel hopelessness/helpless."

14.     Mr. Vinson answered "Yes" to Question 10.

15.     Such a report of "hopelessness," even without any expression of suicidal

ideations, is considered among the clinical risk factors for determining appropriate and urgent

follow-up for suicide prevention, particularly in the correctional context.

16.     Ms. Wells also completed a Special Need Identification Form at or about the same

time as the Receiving Screening. Therein, she recorded that Mr. Vinson told her that "he's

3

depressed" and that "he feels no one cares about his feelings." Another as-of-yet unidentified
medical provider who, upon information and belief, was an employee of Wellpath, also signed
that Form.

17.    At the conclusion of the Receiving Screening, Ms. Wells had the opportunity to
make certain recommendations and referrals as a result of her clinical findings. Contrary to the
form's explicit instructions and the applicable standard of care, Ms. Wells did and/or failed to do
the following:

- In the section for monitoring, she did not select the option for "Suicide Watch;"
- Under "Placement/Housing Recommendation," she selected the box for "General
  Population (GP)" in lieu of other options for closer observation and/or other
  safety precautions;
- A "Routine" referral to mental health was entered as opposed to one that was
  either "Emergent" or "Urgent."

18.    As a result of this intake and referral process, Ms. Wells completed a "Mental

Health Referral Form" on August 14, 2022.

19.    That form stated the following reason for referral: "Upon intake, pt reports c/o

feeling depressed recently. Denies suicidal ideations."

20.    The form was e-signed by Ms. Wells on August 14, 2022 at 9:16 PM.

21.    Consistent with Ms. Wells' recommendation, Mr. Vinson was placed into the

general population of the Norfolk City Jail on August 14, 2022.

22.    The Mental Health Referral Form was also e-signed by Ms. Purkerson on August

15, 2022 at 11:19 AM, indicating that by no later than that time, still three days before Mr.

Vinson's death, Ms. Purkerson was aware of his self-reported depression.

23.    According to Mr. Vinson's medical records, a Mental Status exam allegedly took

place on the same day by Ms. Purkerson. Ms. Purkerson purportedly wrote as part of her

4

recordation of this alleged mental status exam, on a document entitled "Mental Health Structured Progress Note," that Mr. Vinson denied suicidal plans and told her he "would never hurt himself."

24.     However, upon information and belief, this visit and exam never actually occurred and the purported August 15, 2022 Mental Health Structured Progress Note was completely fabricated by Ms. Purkerson. She never examined Mr. Vinson, she never talked to Mr. Vinson, and Mr. Vinson did not say the things she made up and recorded on the Mental Health Structured Progress Note.

25.     Upon information and belief, Mr. Vinson was not examined by any mental health professional during this stay at the Norfolk City Jail.

26.     On August 18, 2022, after spending several days in the facility's general population and without being seen by a mental health professional since his admission, Mr. Vinson hung himself in his cell. He did so in a manner that would not have been possible if he had been placed on suicide watch.

## III.   CAUSES OF ACTION

### COUNT I:  NEGLIGENCE
### (Wellpath & Ms. Wells)

27.     Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

28.     At all times relevant to this Complaint, Ms. Wells was acting as a nurse duly licensed to practice in Virginia. As such, she owed a duty to possess, apply, and use the skill and care of a reasonable and well-qualified nurse in the care and treatment of patients coming under her care.

29.     Ms. Wells owed a duty to exercise reasonable skill and care in her treatment of

Mr. Vinson.

30.     Ms. Wells was negligent in the medical care and treatment rendered to Mr.

Vinson as alleged herein, because she failed to render her services with that degree of care, skill,

and attention required by the law. Because she was acting within the course and scope of her

employment with Wellpath when she treated Mr. Vinson, the negligence of Ms. Wells is imputed

to Wellpath as a matter of law pursuant to the doctrine of *respondeat superior*.

31.     Specifically, Ms. Wells's negligence includes, but is not necessarily limited to the

following acts and omissions:

- Failing to recommend suicide watch monitoring;

- Failing to recommend STAT placement on Suicide Precautions;

- Recommending that Mr. Vinson be housed in the jail's general population;

- Failing to refer Mr. Vinson for an emergent or STAT mental health evaluation and treatment;

- Failing to otherwise properly follow-up on the feelings of depression and hopelessness expressed by Mr. Vinson during the Receiving Screening;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

32.     Upon information and belief, other employees and/or agents of Wellpath

participated in, aided, or were party to these negligent acts and/or omissions. Wellpath, through

its other agents and/or employees, additionally failed to properly assess, observe, manage, and/or

treat Mr. Vinson's mental health and overall wellbeing between August 14 and August 18, 2022.

Such other individuals include, but may not be limited to: 1) the medical provider who co-signed

Mr. Vinson's Special Need Identification Form on August 15, 2022; 2) Ms. Purkerson, Mental

Health Professional, to the extent she was acting as an agent or employee of Wellpath between

6

August 14 and August 18, 2022; 3) any physician(s) responsible for supervising Ms. Wells as

she performed Mr. Vinson's intake screening on August 14, 2022; 4) any physician(s)

responsible for supervising the mental health services provided by Ms. Purkerson between

August 14 and August 18, 2022; and/or 5) any physician(s) responsible for monitoring the

mental health of inmates at Norfolk City Jail between August 14 and August 18, 2022.

33.     The negligence of Wellpath and Ms. Wells, as specified above and otherwise,

proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein

pursuant to Virginia Code § 8.01-50 et seq.

## COUNT II: GROSS NEGLIGENCE
### (Ms. Purkerson)

34.     Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth

in full herein.

35.     At all times relevant to this Complaint, Ms. Purkerson was acting as a licensed

professional counselor duly licensed to practice in Virginia. As such, she owed a duty to possess,

apply, and use the skill and care of a reasonable and well-qualified licensed professional

counselor in the care and treatment of patients coming under her care.

36.     Ms. Purkerson owed a duty to exercise reasonable skill and care and not to be

grossly negligent in her treatment of Mr. Vinson.

37.     Ms. Purkerson was grossly negligent because her actions demonstrate indifference

to Mr. Vinson and an utter disregard of prudence that amounts to a complete neglect of his

safety. Her actions constitute the absence of even slight diligence and the want of even scant

care.

38.     Specifically, Ms. Purkerson's gross negligence includes, but is not necessarily

limited to, the following acts and omissions:

- Failing to properly respond to Mr. Vinson's expressions of depression and hopelessness recorded during the Receiving Screening and referenced on the Mental Health Referral Form, despite e-signing the Mental Health Referral Form three days before Mr. Vinson's death and, upon information and belief, having access to the underlying Receiving Screening information and/or other information about Mr. Vinson's condition;

- Failing to timely visit and/or assess Mr. Vinson despite such actual and/or constructive knowledge;

- Failing to seek correction of the inappropriate recommendations for Mr. Vinson's housing and medical care despite such actual and/or constructive knowledge;

- Completing a Mental Health Structured Progress Note without actually seeing Mr. Vinson as a patient;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

39.    To the extent that Ms. Purkerson drafted and signed the fake Mental Health Structured Progress Note on the date stated on the form, she did so while Mr. Vinson was still alive. Her actions in lying about evaluating Mr. Vinson and fabricating a form evidencing the same, rather than actually doing an evaluation of Mr. Vinson, constitute gross negligence and the absence of even slight care.

40.    To the extent that Ms. Purkerson drafted and signed the fake Mental Health Structured Progress Note after Mr. Vinson died, as an effort to cover up the wrongful acts of herself and/or others, it is evidence of her guilt and knowledge prior to his death and an acknowledgment that she so grossly and completely violated the standard of care in her treatment of Mr. Vinson that she was willing to lie on an official health form in an attempt to cover it up.

41.    Ms. Purkerson's gross negligence proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

8

42.    Due to the gross negligence of Ms. Purkerson, Plaintiff is also entitled to an award of punitive damages.

## COUNT III:  WILLFUL AND WANTON NEGLIGENCE
### (Ms. Purkerson)

43.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

44.    At all times relevant to this Complaint, Ms. Purkerson was acting as a licensed professional counselor duly licensed to practice in Virginia. As such, she owed a duty to possess, apply, and use the skill and care of a reasonable and well-qualified licensed professional counselor in the care and treatment of patients coming under her care.

45.    Ms. Purkerson owed a duty to exercise reasonable skill and care and not to be willfully and wantonly negligent in her treatment of Mr. Vinson.

46.    Ms. Purkerson actions were undertaken in conscious disregard of the rights of Mr. Vinson, or with reckless indifference to the consequences of her actions, knowing that her conduct would probably cause harm to others; thus, she is liable for willful and wanton negligence.

47.    Specifically, Ms. Purkerson's willful and wanton negligence includes, but is not necessarily limited to, the following acts and omissions:

- Failing to properly respond to Mr. Vinson's expressions of depression and hopelessness recorded during the Receiving Screening and referenced on the Mental Health Referral Form despite e-signing the Mental Health Referral Form three days before Mr. Vinson's death and, upon information and belief, having access to the underlying Receiving Screening information and/or other information about Mr. Vinson's condition;

- Failing to timely visit and/or assess Mr. Vinson despite such actual or constructive knowledge;

9

- Failing to correct the inappropriate recommendations for Mr. Vinson's housing and medical care despite such actual or constructive knowledge;

- Completing a Mental Health Structured Progress Note without actually seeing Mr. Vinson as a patient;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

48.     To the extent that Ms. Purkerson drafted and signed the fake Mental Health Structured Progress Note on the date stated on the form, she did so while Mr. Vinson was still alive. Her actions in lying about evaluating Mr. Vinson and fabricating a form evidencing the same, rather than actually doing an evaluation of Mr. Vinson, constitute willful and wanton negligence.

49.     In that event, Ms. Purkerson's willful and wanton negligence proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

50.     Due to the willful and wanton negligence of Ms. Purkerson, Plaintiff is also entitled to an award of punitive damages.

## IV.    DAMAGES & PRAYER FOR RELIEF

51.     Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full.

52.     As the result of the wrongful death of Mr. Vinson, his statutory beneficiaries have suffered severe and substantial damages, including, but not limited to, sorrow, mental anguish, and solace, including loss of society, companionship, comfort, guidance, kindly offices and advice, as well as reasonably expected income, services, protection, care, and assistance.

53.     For the grossly negligent actions of Ms. Purkerson, and/or her actions that constitute willful and wanton negligence, Plaintiff is entitled to an award of punitive damages.

54.   In addition to the above damages, Plaintiff is entitled to an award of interest at the

statutory rate from August 18, 2022, pursuant to Virginia Code § 8.01-382.

55.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment

against Defendants, jointly and severally, as follows:

56.   On Count I, against Wellpath and Ms. Wells, jointly and severally, Plaintiff requests:

- Compensatory damages for the wrongful death of Mr. Vinson in the amount of THREE MILLION TWO HUNDRED THOUSAND DOLLARS ($3,200,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

- Court costs and such other and further relief as the Court may deem just and proper.

57.   On Counts II and III, against Ms. Purkerson, Plaintiff requests:

- Compensatory damages, jointly and severally with those found liable under Count I, in the amount of THREE MILLION TWO HUNDRED THOUSAND DOLLARS ($3,200,000.00);

- Punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

- Court costs and such other and further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON

By: _____

Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer (VSB #80936)
Kevin A. Hoffman (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone:     (757) 301-9995
Facsimile:      (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: rosalyn.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

12



CL24-5057

Email: kevin.hoffman@singerhoffman.com

April 29, 2024



APR 29 2024

NORFOLK CIRCUIT COURT CLERK
BY_____ D.C.

Hon. George E. Schaefer, Clerk
Clerk's Office, Norfolk Circuit Court
150 St. Paul's Boulevard, 7th Floor
Norfolk, Virginia 23510-2773

**Re:**   Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath, LLC,
Sharon Wells, and Anne Purkerson
**Our File No.:** 8476-001

Dear Mr. Schaefer:

Enclosed are the original, one (1) copy for our records, and three (3) service copies of the
Complaint which we ask that you file in the above-referenced matter. I have also included a civil
cover sheet and a firm check in the amount of $354.00 for the filing fee.

We will be using a private process service and ask that the Complaint be prepared for process
to be picked up at the Court. Please contact my legal assistant, Tonya Thomason at 757-263-4174, or
via email at tonya.thomason@singerhoffman.com, when the service copies are ready for pick-up.

If you have any questions or need any additional information, please let me know.

With best regards, I am

Sincerely yours,

Kevin A. Hoffman

KAH/tt
Enclosures



CL24-5057

Email: kevin.hoffman@singerhoffman.com

April 29, 2024



Hon. George E. Schaefer, Clerk
Clerk's Office, Norfolk Circuit Court
150 St. Paul's Boulevard, 7th Floor
Norfolk, Virginia 23510-2773

**Re:** Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath, LLC,
Sharon Wells, and Anne Purkerson
**Our File No.:** 8476-001

Dear Mr. Schaefer:

Enclosed are the original, one (1) copy for our records, and three (3) service copies of the Complaint which we ask that you file in the above-referenced matter. I have also included a civil cover sheet and a firm check in the amount of $354.00 for the filing fee.

We will be using a private process service and ask that the Complaint be prepared for process to be picked up at the Court. Please contact my legal assistant, Tonya Thomason at 757-263-4174, or via email at tonya.thomason@singerhoffman.com, when the service copies are ready for pick-up.

If you have any questions or need any additional information, please let me know.

With best regards, I am

Sincerely yours,

Kevin A. Hoffman

KAH/tt
Enclosures



VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the ESTATE OF
PHILEMON S. VINSON,

     Plaintiff,

v.

                                  Case No: CL24-5057

WELLPATH, LLC,
SHARON WELLS,
and
ANNE PURKERSON,

     Defendants.

## ANSWER TO COMPLAINT

COMES NOW Defendant Wellpath, LLC, by counsel, and, without waiver of the arguments in its Demurrer and Plea in Bar, states the following for its Answer to the Complaint:

1. The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 1; therefore, the Defendant denies the allegations.

2. The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 2; therefore, the Defendant denies the allegations

3. With respect to the allegations in Paragraph 3, the Defendant admits that it is a limited liability company with its headquarters in Tennessee and it is licensed to do business in the Commonwealth of Virginia. The Defendant denies the remaining allegations.

4. With respect to the allegations in Paragraph 4 and upon information and belief, the Defendant admits that Sharon Rice, LPN was a licensed practical nurse in 2022. The Defendant denies the remaining allegations.

5.  With respect to the allegations in Paragraph 5, the Defendant admits that it employed Sharon Rice, LPN in July and August 2022 and Nurse Rice's name appears on certain documents in Mr. Vinson's medical file. The Defendant does not have sufficient information to admit or deny the remaining allegations and, therefore, denies the remaining allegations.

6.  The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 6; therefore, the Defendant denies the allegations.

7.  With respect to the allegations in Paragraph 7, the Defendant admits that in July and August 2022, it was contracted with the Jail to employ certain medical and mental health personnel to provide medical and mental health care, as needed, to inmates. The Defendant denies the remaining allegations.

8.  With respect to the allegations in Paragraph 8, the Defendant admits that this Court is a permissible venue for the claims in the Complaint.

9.  Upon information and belief, the Defendant admits the allegations in Paragraph 9.

10. The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 10; therefore, the Defendant denies the allegations.

11. With respect to the allegations in Paragraph 11, the Defendant admits that a Receiving Screening dated August 14, 2022 and signed by Sharon Rice, LPN notes "Observation…Behavior Appropriate…Speech Clear/coherent". The Defendant denies the remaining allegations.

12. With respect to the allegations in Paragraph 12, the Defendant admits that a Receiving Screening has the language "Mental Health and Suicide Risk Screening" and "A 'YES' response to any Questions 10, 13, 14, 15, 17, 18: place on suicide watch & STAT referral to MHP". The Defendant denies the remaining allegations.

2

13. With respect to the allegations in Paragraph 13, the Defendant admits that a Receiving Screening has the language, "10. Have feelings that there is nothing to look forward to or feel hopelessness/helpless? Yes. Explain: Pt expressed that his feelings are not being considered, denies suicidal ideation." The Defendant denies the remaining allegations.

14. With respect to the allegations in Paragraph 14, the Defendant admits that a Receiving Screening has the language, "10. Have feelings that there is nothing to look forward to or feel hopelessness/helpless? Yes. Explain: Pt expressed that his feelings are not being considered, denies suicidal ideation." The Defendant denies the remaining allegations.

15. The allegations in Paragraph 15 are not factual assertions related to Mr. Vinson, are vague assertions of opinion, do not contain context, and are from an unknown source; therefore, there is not sufficient information for the Defendant to admit or deny the allegations and the Defendant denies the allegations.

16. With respect to the allegations in Paragraph 16, the Defendant admits that a Special Need Identification Form has two (2) signatures, one of which is "S. Rice LPN", and has handwriting noting, "Sts depressed…No S/I plan Pt denies but sts he feels no one cares about his feelings". The Defendant denies the remaining allegations.

17. With respect to the allegations in Paragraph 17, the Defendant denies negligence or any wrongdoing. The Defendant admits that the Receiving Screening has the language "Disposition…Monitoring" and the box for suicide watch was not marked, has the language "Placement/Housing Recommendation" and the box for General Population was marked, and has the language "Does patient need a referral?" and the boxes for Mental Health/Routine and Chronic Care/Routine were marked. The Defendant denies the remaining allegations.

3

18. With respect to the allegations in Paragraph 18, the Defendant admits that a Mental Health Referral Form has the language, "Name & Title of Person making Referral S. Rice, LPN" and "E-signed by Sharon Rice, LPN/LVN on 8/14/2022 09:16 PM EST". The Defendant denies the remaining allegations.

19. With respect to the allegations in Paragraph 19, the Defendant admits that a Mental Health Referral Form has the language, "Reason for Referral: Upon intake, pt reports c/o feeling depresses recently. Denies suicidal ideations." The Defendant denies the remaining allegations.

20. With respect to the allegations in Paragraph 20, the Defendant admits that a Mental Health Referral Form has the language, "E-signed by Sharon Rice, LPN/LVN on 8/14/2022 09:16 PM EST". The Defendant denies the remaining allegations.

21. The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 21; therefore, the Defendant denies the allegations.

22. With respect to the allegations in Paragraph 22, the Defendant admits that a Mental Health Referral Form has the language, "E-signed by Anne Purkerson, Mental Health Professional on 8/15/2022 11:19 AM EST". The Defendant denies the remaining allegations.

23. With respect to the allegations in Paragraph 23, the Defendant admits that a Mental Health Structured Progress Note has a signature by "Purkerson, MA, LPC, MHD" and has the language, "Suicidal Ideations Noted? No" and "would never hurt himself". The Defendant denies the remaining allegations.

24. The Defendant does not have sufficient information to admit or deny the allegations in Paragraph 24; therefore, the Defendant denies the allegations.

25. The Defendant denies the allegations in Paragraph 25.

26. The Defendant denies the allegations in Paragraph 26.

4

27. Paragraph 27 does not contain any specific allegations. To the extent a response is required, the Defendant denies the allegations.

28. With respect to the allegations in Paragraph 28, the Defendant admits that Sharon Rice, LPN would have been generally obligated to comply with the standard of care provided in Virginia Code §8.01-581.20 when treating patients. The Defendant denies the remaining allegations.

29. With respect to the allegations in Paragraph 29, the Defendant admits that Sharon Rice, LPN would have been generally obligated to comply with the standard of care provided in Virginia Code §8.01-581.20 when treating patients. The Defendant denies the remaining allegations.

30. The Defendant denies the allegations in Paragraph 30.

31. The Defendant denies the allegations in Paragraph 31.

32. The Defendant denies the allegations in Paragraph 32.

33. The Defendant denies the allegations in Paragraph 33.

34. Paragraph 34 does not contain any specific allegations. To the extent a response is required, the Defendant denies the allegations.

35. The allegations in Paragraph 35 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

36. The allegations in Paragraph 36 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

37. The allegations in Paragraph 37 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

38. The allegations in Paragraph 38 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

39. The allegations in Paragraph 39 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

40. The allegations in Paragraph 40 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

41. The allegations in Paragraph 41 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

42. The allegations in Paragraph 42 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

43. Paragraph 43 does not contain any specific allegations. To the extent a response is required, the Defendant denies the allegations.

44. The allegations in Paragraph 44 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

45. The allegations in Paragraph 45 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

46. The allegations in Paragraph 46 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

47. The allegations in Paragraph 47 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

48. The allegations in Paragraph 48 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

49. The allegations in Paragraph 49 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

50. The allegations in Paragraph 50 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

51. Paragraph 51 does not contain any specific allegations. To the extent a response is required, the Defendant denies the allegations.

52. The Defendant denies the allegations in Paragraph 52.

53. The allegations in Paragraph 53 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

54. The Defendant denies the allegations in Paragraph 54.

55. The Defendant denies the allegations in Paragraph 55.

56. The Defendant denies the allegations in Paragraph 56.

57. The allegations in Paragraph 57 are not directed at the Defendant, therefore no response is required. To the extent a response is required from the Defendant, the Defendant denies the allegations.

### Affirmative and General Defenses

1. The Defendant denies all allegations and/or conclusions in the Complaint that have not been specifically admitted in this Answer. The Defendant denies that it, or anyone for whom it is legally responsible, breached or violated any duty owed to Mr. Vinson. The Defendant denies that it, or anyone for whom it is legally responsible, committed any wrongful act or any act of negligence. The Defendant denies that it, or anyone for whom it is legally responsible, proximately caused Mr. Vinson's injuries or death. The Defendant denies that it is obligated to the Plaintiff or Mr. Vinson in any amount or for any cause.

2. Any recovery against the Defendant by the Plaintiff would be limited to the applicable amounts set forth in §§8.01-581.15 and 8.01-38.1 of the *Code of Virginia*.

3. The Defendant will assert the affirmative defense of contributory negligence.

4. The Defendant relies on the additional defenses documented in its Demurrer and Plea in Bar.

WHEREFORE, for the foregoing reasons, the Defendant demands judgment on its behalf, together with its costs expended herein.

TRIAL BY JURY IS DEMANDED.

WELLPATH, LLC
By Counsel

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: 804-655-4830
Facsimile: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com

## CERTIFICATE

I certify that a true and exact copy of the foregoing *Answer* was emailed and mailed,
postage fully pre-paid, this 22 day of May, 2024, to:
Randy D. Singer, Esquire
Rosalyn K. Singer, Esquire
Kevin A. Hoffman, Esquire
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: 757-301-9995
randy.singer@singerhoffman.com
Rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
**Counsel for Plaintiff**

Angela Boice Axselle



**Wimbish Gentile MᶜCray & Roeber**

**Angela Boice Axselle**
Attorney
aaxselle@wgmrlaw.com

8730 Stony Point Parkway
Suite 201
Richmond, VA 23235
www.wgmrlaw.com

direct    804.655.4846
office    804.655.4830
facsimile    804.980.7819

May 22, 2024



**VIA UPS GROUND**
George E. Schaefer, Clerk
Norfolk Circuit Court
150 St. Paul's Blvd, 7ᵗʰ Floor
Norfolk, VA 23510-2773

> **Re:    Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v.**
> **Wellpath, LLC, Sharon Wells and Anne Purkerson**
> **Case No: CL24005057-00**

Dear Mr. Schaefer:

Please find enclosed for filing an Answer, Demurrer, and Plea in Bar on behalf of Defendant Wellpath, LLC, in the above-styled case. I am also enclosing a copy of the first page of these pleadings that I would appreciate you file stamping and returning to us in the self-addressed, stamped envelope provided for your convenience.

Should you have any questions, please do not hesitate to contact me.

Sincerely yours,

Angela Axselle

Angela Boice Axselle

ABA/eg
Enclosures

cc:    Kevin A. Hoffman, Esquire (w/encl. via email and mail)

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the ESTATE OF
PHILEMON S. VINSON,

      Plaintiff,

v.

WELLPATH, LLC,
SHARON WELLS,
and
ANNE PURKERSON,

      Defendants.

Case No: CL24-5057

## DEMURRER

COMES NOW Defendant Wellpath, LLC, by counsel, and moves to dismiss the claims against it in the Complaint. Pursuant to Virginia Code §8.01-273, the Defendant states the following in support of its Demurrer to the Complaint:

1.     The Plaintiff filed the underlying Complaint on behalf of Philemon S. Vinson. Mr. Vinson was an inmate at the Norfolk City Jail (the "Jail") for less than five (5) days and committed suicide at the Jail on August 18, 2022. Complaint ¶9, 26. There is no allegation that Mr. Vinson reported any suicidal ideation or intention to anyone between his arrival at the Jail and his suicide. To the contrary, Mr. Vinson was asked about his mental state by medical and/or mental health staff and, while he admitted to feeling hopeless, Mr. Vinson specifically denied that he was suicidal and stated that he "would never hurt himself". Complaint ¶ 19, 23. Despite this, the Plaintiff claims that the three (3) defendants failed to predict and prevent Mr. Vinson from committing suicide.

2.     In the Complaint, the Plaintiff asserted a claim for simple negligence against the Defendant (Count I). In this Demurrer, the Defendant requests that this Court dismiss the

negligence claim against it because (i) it is barred because of Mr. Vinson's illegal act, and (ii) the Plaintiff failed to state facts upon which the demanded relief for certain claims can be granted.

### Barred by Illegal Act

3.      In Virginia, "a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequence of that act." *Wackwitz v. Roy*, 244 Va. 60, 64, 418 S.E.2d 861, 864 (1992), citing *Miller v. Bennett*, 190 Va. 162-164-65, 56 S.E.2d 217, 218 (1949); *Molchon v. Tyler*, 262 Va. 175, 180, 546 S.E.2d 691, 695 (2001). When this Virginia rule is applied to tort actions such as this one, "consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of that act." *Wackwitz*, 244 Va. at 64. The *Wackwitz* Court explained the basis for this rule is "that courts will not lend their assistance to one who participates in an illegal act and who seeks to profit therefrom." *Wackwitz*, 244 Va. at 64.

4.      The Complaint acknowledges that Mr. Vinson committed suicide by hanging himself. Compl. ¶26. The *Wackwitz* Court affirmed that suicide is recognized in Virginia as a criminal act. *Wackwitz*, 244 Va. at 65. Common law requires that the person who committed suicide be "of years of discretion" and "of sound mind". *Id*. The Court explained that the common law rule is consistent with the contemporary definition of "suicide", which is "'the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind". *Id*. The Plaintiff has not asserted that Mr. Vinson was not of sound mind. In addition, it is well-settled in Virginia that all people are presumed to be of sound mind. *Howard v. Howard*, 112 Va. 566, 72 S.E.133, 133 (1911).

5       Therefore, Mr. Vinson's suicide was an illegal act, and his estate cannot benefit

from his illegal act with this lawsuit. The Plaintiff's claims are barred and the Defendant requests

that the Complaint be dismissed with prejudice.

### Failed to State Claim or Facts- Paragraphs 31 and 32

6.      To meet statutory and Rule requirements, Mr. Vinson must state sufficient facts in

the Complaint and clearly inform the Defendant "of the true nature of the claim or defense." Va.

Sup. Ct. R. 1:4(d). In addition, if a pleading does not state a cause of action or does not state facts

upon which the demanded relief can be granted, a demurrer is the appropriate remedy. Code of

Virginia §8.01-273.

7.      In determining whether a demurrer is proper, the Courts will "accept as true all

factual allegations expressly pleaded in the complaint and interpret those allegations in the light

most favorable to the plaintiff." *Doe v. Baker*, 857 S.E.2d 573, 581-582 (2021); *Coward v.

Wellmont Health System*, 295 Va. 351, 358, 812 S.E.2d 766, 769-770 (2018). However, there are

two (2) limits on this rule. First, the Courts can only accept *reasonable* unstated inferences and

must reject those that are arbitrary, strained, forced, or contrary to reason. *Doe*, 857 S.E.2d at 581-

582; *Coward,* 295 Va. at 358-359 (*emphasis* added). Factual allegations "must be made with

sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."

*A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 465 (2019). Second,  the  Courts  must

distinguish allegations of historical fact from conclusions of law and will not accept the veracity

of conclusions of law camouflaged as factual allegations or inferences. *Doe*, 857 S.E.2d at 581-

582; *Coward,* 295 Va. at 358-359.

3

8.    With this framework for analysis, Mr. Vinson's vague negligence claims in Paragraphs 31 and 32 must be dismissed because he has not pled sufficient facts or a sufficient legal basis for them.

9.    In order to establish a *prima facia* case for a negligence claim, the Plaintiff is required to allege the following elements *with factual support*: (i) a legal duty to Mr. Vinson, (ii) the applicable standard of care, (ii) a breach of that standard of care, and (iii) that the breach proximately caused Mr. Vinson's suicide. *Raines v. Lutz*, 231 Va. 110, 113, 341 S.E.2d 194 (1986); *Didato v. Strehler*, 262 Va. 617, 627, 554 S.E.2d 42 (2001).

10.    Simple negligence is the "failure to use that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Evans v. Evans*, 280 Va. 76, 695 S.E.2d 173, 179 (2010). It requires proof of "heedlessness, inattention [or] inadvertence." *Green v. Ingram*, 269 Va. 281, 292, 608 S.E.2d 917, 923 (2005). The failure to establish any of these specific elements of a negligence cause of action is fatal to the negligence cause of action.

11.    As a corporate defendant, Wellpath could only be held responsible for a negligence cause of action through the actions of specific employees and doctrine of *respondeat superior* because an entity "acts" through its employees. "[A]n employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 832 S.E.2d 15, 22 (2019). Therefore, the Plaintiff is required to establish that a particular person was negligent, showing factual support for a duty, breach, and causation, and must also establish facts to show that the specific person was an employee of the Defendant.

12.     The Plaintiff asserted a negligence claim against the Defendant based on the alleged negligence of "other employees and/or agents". Complaint ¶32. In addition, the Plaintiff is relying on a placeholder claim related to Nurse Rice in Paragraph 31. Complaint ¶31 ("Other negligent acts or omissions that may arise during discovery and litigation in this matter.") The failure to identify *specific Wellpath employees/negligent actors* and *specific negligent acts* does not meet the pleading requirements noted above and leaves the Defendant guessing as to who exactly the Plaintiff believes acted negligently and what exactly each person did that was negligent. The Defendant requests that these claims be dismissed with prejudice.

13.     In addition, unlike other civil matters, medical malpractice cases require factual and expert support for each element of the case against each defendant before the lawsuit is served on each defendant. Virginia Code §8.01-50.1 requires plaintiffs to certify to defendants that they have:

> obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to subsection A of § 8.01-581.20 a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.

14.     The language in Virginia Code §16.1-83.1 anticipates dismissal with prejudice if a plaintiff, like the Plaintiff in this case, fails to comply with the necessary, pre-service, written expert certification.

> If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant, the court **shall impose sanctions** according to the provisions of §8.01-271.1 **and may dismiss the case with prejudice**. (**Emphasis** added.)

15.     Moreover, several Virginia Circuit Courts have held that the failure to obtain the statutory expert certification is cause for dismissal. See *Wallace v. Farah*, 72 Va. Cir. 37 (Stafford County 2006); See also *Forrest v. K-Mart Corp.,* At Law No. 03001017-01 (City of Hampton 2007); *Gibson v. Chesapeake General Hosp.*, At Law No. 05-1043 (City of Chesapeake 2006);

*Hansen v. Lapeyrolerie*, At Law No. 06-3012 (City of Norfolk 2007); *Lewis v. Commonwealth Orthopaedics & Rehab.,* At Law No. 20056616 (Fairfax County 2006); *Mason v. Downing*, At Law No. 08-2087 (Albemarle County 2008); *Poe v. Gisolfi*, At Law No. 2005-5734 (Fairfax County 2006); *Ellison v. Spain*, At Law No. CL16002287-00 (City of Norfolk 2016); *Newcomb v. The Woodview*, Case No. GV14001164-00 (Fairfax County General District Court, September 19, 2014).

16.     Therefore, there is no legal or factual basis for the vague negligence claims against the Defendant in Paragraphs 31 and 32 involving unknown defendants and unknown actions and the Defendant requests that the claims be dismissed.

WHEREFORE, for the reasons stated in this brief, the Defendant respectfully requests that this Court grant its Demurrer and dismiss all of the claims against it with prejudice.

WELLPATH, LLC
By Counsel

_____

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: 804-655-4830
Facsimile: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com

### CERTIFICATE

I certify that a true and exact copy of the foregoing *Demurrer* was emailed and mailed, postage fully pre-paid, this 22 day of May, 2024, to:
Randy D. Singer, Esquire
Rosalyn K. Singer, Esquire
Kevin A. Hoffman, Esquire
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: 757-301-9995
randy.singer@singerhoffman.com
Rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
**Counsel for Plaintiff**

_____
Angela Boice Axselle

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the ESTATE OF
PHILEMON S. VINSON,

      Plaintiff,

v.

      Case No: CL24-5057

WELLPATH, LLC,
SHARON WELLS,
and
ANNE PURKERSON,

      Defendants.

## PLEA IN BAR

COMES NOW Defendant Wellpath, LLC, by counsel, and moves to dismiss the claims in the Complaint because the claims are barred. The Defendant states the following in support of its Plea in Bar:

1.      In this medical malpractice lawsuit, the Plaintiff claims that the Defendants negligently caused Mr. Vinson to commit suicide while he was incarcerated at the Norfolk City Jail (the "Jail"), even though the Plaintiff acknowledges in the Complaint that Mr. Vinson told medical and/or mental health staff that he was not suicidal and "would never hurt himself". Complaint ¶19, 23

2.      A plea in bar is a discreet, defensive pleading in which a defendant "asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Forest Lakes Community Association, Inc. v. United Land Corp. of America*, 293 Va. 113, 119, 795 S.E.2d 875, 878 (2017), citing *Hawthorne v. VanMarter*, 279 Va. 566, 577, 692 S.E.2d 226, 233 (2010).

3.    The Plaintiff's negligence claims for damages resulting from Mr. Vinson's suicide are barred as a matter of law because Mr. Vinson's death was caused by his own illegal and wrongful act of suicide.

4.    It is a well-settled rule in Virginia that, "a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequence of that act." *Wackwitz v. Roy*, 244 Va. 60, 64, 418 S.E.2d 861, 864 (1992), citing *Miller v. Bennett*, 190 Va. 162-164-65, 56 S.E.2d 217, 218 (1949); *Molchon v. Tyler*, 262 Va. 175, 180, 546 S.E.2d 691, 695 (2001). When this rule is applied to tort actions such as this one, "consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of that act." *Wackwitz*, 244 Va. at 64. The *Wackwitz* Court explained the basis for this rule is "that courts will not lend their assistance to one who participates in an illegal act and who seeks to profit therefrom." *Wackwitz*, 244 Va. at 64.

5.    The Complaint acknowledges that Mr. Vinson committed suicide by hanging himself. Compl. ¶26. The *Wackwitz* Court affirmed that suicide is recognized in Virginia as a criminal act. *Wackwitz*, 244 Va. at 65. Common law requires that the person who committed suicide be "of years of discretion" and "of sound mind". *Id*. The Court explained that the common law rule is consistent with the contemporary definition of "suicide", which is "'the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind". *Id*. The Plaintiff has not asserted that Mr. Vinson was not of sound mind. In addition, it is well-settled in Virginia that all people are presumed to be of sound mind. *Howard v. Howard*, 112 Va. 566, 72 S.E.133, 133 (1911).

6.    The Plaintiff cannot recover for the consequences of Mr. Vinson's illegal act and the Plaintiff's claimed are barred as a matter of law.

2

WHEREFORE, for the reasons stated in this Plea, the Defendant requests that this Court

grant its Plea and dismiss the claims against the Defendant.

WELLPATH, LLC
By Counsel

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: 804-655-4830
Facsimile: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com

## **CERTIFICATE**

I certify that a true and exact copy of the foregoing *Plea in Bar* was emailed and mailed,
postage fully pre-paid, this 22 day of May, 2024, to:
Randy D. Singer, Esquire
Rosalyn K. Singer, Esquire
Kevin A. Hoffman, Esquire
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: 757-301-9995
randy.singer@singerhoffman.com
Rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
**Counsel for Plaintiff**

Angela Boice Axselle





**FOURTH JUDICIAL CIRCUIT OF VIRGINIA**

CIRCUIT COURT OF THE CITY OF NORFOLK

150 ST. PAUL'S BOULEVARD, SUITE 800
NORFOLK, VIRGINIA 23510

July 16, 2024

Randy D. Singer, Esq.
Rosalyn K. Singer, Esq.
Kevin A. Hoffman, Esq.
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, Virginia  23451

Joel M. McCray, Esq.
Angela Boice Axselle, Esq.
Wimbish Gentile McCray & Roeber, PLLC
8730 Stony Point Parkway, Suite 201
Richmond, Virginia  23235

   **Re:** **Jamie Vinson, Administrator of the Estate of Philemon S. Vinson**
     **v. Wellpath, LLC, *et al.***
     **Civil No.:  CL24-5057**

Dear Counsel:

   The above referenced case has been assigned to **Judge Everett A. Martin, Jr.**

   Please obtain mutually available dates to schedule an initial pretrial conference on a Tuesday, Wednesday or Thursday, and contact me within the next three weeks at 757-664-4594 or wspivey@vacourts.gov with a date and time for the hearing (conference call).

   Judge Martin requires that you call his Law Clerk at 757-664-4599 when any motion is filed so that the Judge may determine whether briefs will be required and, if so, set a briefing schedule.

       Very truly yours,

       Wendy S. Spivey
       Judicial Docket Administrator
       for Tasha D. Scott, Chief Judge

cc:  Judge Everett A. Martin, Jr.
   Sophie L. Thornton, Law Clerk
   Clerk's Office



Direct Dial: 757.598.5061
Email: kevin.hoffman@singerhoffman.com

August 14, 2024

**VIA EMAIL: Civil710@circuitcourtva.us**
Hon. George E. Schaefer, Clerk
Clerk's Office, Norfolk Circuit Court
150 St. Paul's Boulevard, 7th Floor
Norfolk, Virginia 23510-2773

      **Re:**    Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath, LLC, *et al.*
              **Case No.: CL24-5057**
              Our File No.: 8476-001

Dear Mr. Schaefer:

    Enclosed please find Plaintiff's Motion for Leave to Amend Complaint with our proposed Order Granting Leave to Amend. We kindly ask you to file the Motion in the above matter and present the Order to Judge Martin for entry. Upon entry of the Order, please file the attached First Amended Complaint as directed by the Order.

    Thank you for your assistance in this matter. If you have any questions or need any additional information, please let me know.

    With best regards, I am

              Sincerely yours,

              Kevin A. Hoffman

KAH/jdc
Enclosures

cc:    Angela B. Axselle, Esq. (via email only)
       Joel M. McCray, Esq. (via email only)

1209A LASKIN ROAD • VIRGINIA BEACH, VA 23451
PHONE: 757.301.9995 | FAX: 757.233.1084 | WWW.SINGERHOFFMAN.COM

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

Plaintiff,

v.                                                    Case No.:  CL24-5057

WELLPATH LLC, et al.,

Defendants.

## MOTION FOR LEAVE TO AMEND COMPLAINT

COMES NOW the Plaintiff, Jamie Vinson, Administrator of the Estate of Philemon S. Vinson ("Plaintiff"), by counsel, and for his Motion for Leave to Amend Complaint pursuant to Virginia Supreme Court Rule 1:8, states as follows:

1.    Plaintiff filed this lawsuit on April 29, 2024, alleging various claims related to the death of Philemon Vinson at the Norfolk City Jail on August 18, 2022.

2.    Through initial written discovery, subpoena responses, and other means, Plaintiff has since received information impacting her theories of liability and the identity of certain parties.

3.    Therefore, Plaintiff seeks leave from the Court to amend her Complaint to include additional defendants and revise the allegations in the manner reflected in Plaintiff's proposed First Amended Complaint, which is attached hereto.

4.    Wellpath LLC, the only defendant to be served thus far in this case, consents to the relief sought herein.

WHEREFORE, Plaintiff respectfully requests this this Court enter the proposed order presented with this Motion in furtherance of the ends of justice and in accordance with Supreme Court Rule 1:8.

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON

By: _____
Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer (VSB #80936)
Kevin A. Hoffman (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone:      (757) 301-9995
Facsimile:      (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: rosalyn.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of August, 2024, I sent a copy of the foregoing via

electronic transmission to:

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: 804-655-4830
Facsimile: 804-980-7819
Email: jmccray@wgmrlaw.com
Email: aaxselle@wgmrlaw.com
*Counsel for Wellpath*

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

Plaintiff,

v.                                                    Case No.:  CL24-5057

WELLPATH LLC, et al.,

Defendants.

## ORDER GRANTING LEAVE TO AMEND COMPLAINT

THIS CAUSE came before the Court on the notice of Plaintiff's Motion for Leave to

Amend Complaint;

AND IT APPEARING to the Court that is it proper for Plaintiff to amend her Complaint

pursuant to Virginia Supreme Court Rule 1:8, in furtherance of the ends of justice, and without

objection;

WHEREFORE the Court, upon consideration of Plaintiff's Motion, is of the opinion that

Plaintiff's Motion for Leave to Amend Complaint should be GRANTED; it is hereby:

ADJUDGED, ORDERED, and DECREED that Plaintiff is given leave to file her First

Amended Complaint. The Clerk is DIRECTED to file the proposed First Amended Complaint

attached to Plaintiff's Motion and it is hereby considered so FILED as of the date of this Order.


Entered this _____ day of _____, 2024.


                                    _____
                                              JUDGE

WE ASK FOR THIS:

_____

Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer (VSB #80936)
Kevin A. Hoffman (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone:     (757) 301-9995
Facsimile:      (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: rosalyn.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

SEEN AND NOT OBJECTED TO:


_____

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864) w/permission by Kevin A. Hoffman
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: 804-655-4830
Facsimile: 804-980-7819
Email: jmccray@wgmrlaw.com
Email: aaxselle@wgmrlaw.com
*Counsel for Wellpath*

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

Plaintiff,

v.                                                    Case No.:  CL24-5057

WELLPATH LLC,                                         JURY TRIAL DEMANDED

SHARON RICE,

      Serve at:      5 Sheila Drive
                   Hampton, Virginia 23664

ANNE PURKERSON,

      Serve at:      1444 Folly Road
                   Charleston, South Carolina 29412

CINCLAIR HOWARD,

      Serve at:      140 East Street
                   Norfolk, Virginia 23510

MELISSA PEPPENHORST,

      Serve at:      140 East Street
                   Norfolk, Virginia 23510

WAYNE HANDLEY,

      Serve at:      306 Park Avenue
                   Buena Vista, Virginia 24416

SHERIFF JOSEPH P. BARON,

      Serve at:      811 E. City Hall Avenue
                   Norfolk, Virginia 23510

      Defendants.

# FIRST AMENDED COMPLAINT

COMES NOW, the Plaintiff, JAMIE VINSON, Administrator of the ESTATE OF PHILEMON S. VINSON ("Plaintiff"), by and through her undersigned counsel, for her First Amended Complaint against the above-named corporation and persons (collectively referred to herein as "Defendants") and states as follows:

## I.    PARTIES, JURISDICTION & VENUE

1.    Plaintiff, at all times relevant to this First Amended Complaint, was a resident of the City of Norfolk, Virginia. Plaintiff is the mother of Philemon Vinson ("Mr. Vinson") and is duly appointed as the Administrator of the Estate of Philemon S. Vinson ("the Estate").

2.    The statutory beneficiaries of the Estate are Mr. Vinson's wife, Kaitlyn, and his three natural born children.

3.    Defendant Wellpath LLC ("Wellpath") was at all times relevant to this First Amended Complaint a Delaware limited liability company, registered to do business in the Commonwealth of Virginia ("Virginia"), with its principal place of business in Nashville, Tennessee.

4.    During the time period at issue in this case, Wellpath served as an independent contractor for the Norfolk Sheriff's Office, providing medical services to the various residents of the Norfolk City Jail. Wellpath also employed various other medical and mental health providers referenced herein and/or involved with Mr. Vinson's care.

5.    Defendant Sharon Rice ("Ms. Rice") was at all times relevant to this First Amended Complaint a nurse licensed to practice in Virginia and a resident of Virginia. Throughout her care and treatment of Mr. Vinson, Wellpath employed Ms. Rice and she was acting within the course and scope of that employment.

6.      Defendant Anne Purkerson ("Ms. Purkerson") was, at all times relevant to the allegations of this First Amended Complaint, a licensed professional counselor licensed to practice in Virginia and a resident of Virginia. Upon information and belief, her current place of domicile is Charleston, South Carolina. At various times relevant to this case, Ms. Purkerson was an employee of Wellpath, before switching to employment with the Norfolk Sheriff's Office as its Director of Mental Health Services shortly before the death of Mr. Vinson.

7.      Defendant Cinclair Howard ("Deputy Howard") was, at all times relevant to this case, a Deputy with the Norfolk Sheriff's Office and a resident of Virginia. Plaintiff sues Deputy Howard, under Count VI, in his individual capacity.

8.      Defendant Melissa Peppenhorst ("Ms. Peppenhorst") was, at all times relevant to this case, a resident of Virginia. At various times relevant to this case, Ms. Purkerson was an employee of Wellpath, before switching to employment with the Norfolk Sheriff's Office as its Director of Inmate Health Services shortly before the death of Mr. Vinson. Plaintiff sues Ms. Peppenhorst, under Count VI, in her individual capacity.

9.      Defendant Wayne Handley ("Chief Handley") was, at all times relevant to this case, employed by the Norfolk Sheriff's Office as the Chief of Staff and/or Director of Behavioral Health Services. Chief Handley was, and is, a resident of Virginia. Plaintiff sues Chief Handley, under Count VI, in his individual capacity.

10.      Sheriff Joseph P. Baron ("Sheriff Baron") was, at all times relevant to this case, the duly elected Sheriff of Norfolk. Sheriff Baron was, and is, a resident of Virginia. Plaintiff sues Sheriff Baron, under Count VI, in his individual capacity.

11.     Venue is proper in this jurisdiction pursuant to Virginia Code § 8.01-262 because multiple defendants regularly conduct substantial business activity here in a way that creates a practical nexus with this cause of action and because this is where the cause of action arose.

## II.     FACTUAL ALLEGATIONS

### A.     *Systemic Understaffing and Insufficient Attention to Mental Health Concerns at the Norfolk City Jail.*

12.     No less than four months prior to Mr. Vinson's death, key decision makers at the Norfolk City Jail, including Sheriff Baron and Chief Handley, as well as other employees of both Wellpath and the Norfolk Sheriff's Office, were aware of systemic problems with understaffing, as well as other policies and procedures that demonstrated deliberate indifference to the mental health of inmates at the Norfolk City Jail.

13.     For example, Dr. Matthew Sachs served as the lone psychiatrist serving the Norfolk City Jail from October 2021 until April 2022. During that period, he was employed by Wellpath on a part-time basis, expected to work nine hours-per-week.

14.     In those nine hours, Dr. Sachs was expected to see, evaluate, diagnose, and treat fifty unique patients, primarily through telehealth visits. This expectation, dictated to him by his Wellpath supervisor, Ms. Peppenhorst, would allow ten minutes or less of direct interaction with each patient, even for new patient evaluations.

15.     In response to an increase of complaints from inmates seeking psychiatric medications, Chief Handley told Dr. Sachs that the Norfolk Sheriff's Office needed "more patients seen" and for him to get "the complaints to stop." Chief Handley was not receptive or responsive to Dr. Sachs' concerns regarding understaffing or to Dr. Sachs' expressed desire to stop the widespread abuse of psychiatric medications by inmates at the Norfolk City Jail.

4

16.     In the publicly reported words of Dr. Sachs, he believed that these mental health policies "will lead to malpractice" and put the lives of inmates at risk. Dr. Sachs expressed these specific concerns both to Ms. Peppenhorst, his supervisor at Wellpath, and to Chief Handley, Director of Behavioral Health Services at the Norfolk Sheriff's Office. Upon information and belief, these concerns were passed on to Sheriff Baron, making him aware of the gross inadequacies in the mental health treatment inmates were receiving at the jail.

17.     These mental health policies and practices, including the fact that Dr. Sachs, as a medical professional, was being supervised and directed in aspects of his medical care by those without appropriate medical training, evidenced an ongoing pattern of improper staffing, understaffing, and deliberate indifference to mental health issues at the Norfolk City Jail that persisted at all times relevant to this First Amended Complaint.

18.     After the media attention garnered by the resignation of Dr. Sachs, Sheriff Baron issued a statement via social media indicating that the Norfolk Sheriff's Office was conducting "a broad review of medical and mental health operations to ensure compliance with our commitment to excellence in the care of our inmates."

19.     Despite this public commitment, neither Sheriff Baron nor anyone else from the Norfolk Sheriff's Office contacted Dr. Sachs as part of this promised review of the policies and procedures affecting the inmates' mental health. If such a review in fact occurred, it did not result in any meaningful improvement of the "mental health operations" at the jail.

20.     In August 2022, Ms. Purkerson, a licensed professional counselor, stated in an internal review interview that she was serving as "the only mental health person in the jail right now." In that capacity she was to serve a prison with an average daily population of seven hundred eighty-two (782) inmates.

21.     Specifically, Ms. Purkerson was expected to handle twenty to twenty-five mental health referrals per day, with as many as forty adding up over the weekends.

22.     This pattern of short staffing and deliberate indifference to the needs of the inmates resulted in distressed patients not being seen, failures to properly evaluate and/or treat inmates with mental health complaints such as depression or hopelessness, and a dangerous culture of apathy among those evaluating and treating inmates at the Norfolk City Jail. Well before August 2022, Wellpath, Ms. Purkerson, Ms. Peppenhorst, Chief Handley and Sheriff Baron were all aware of the existence of these shortcomings, their effect on the delivery of mental health care to inmates at the Norfolk City Jail, and the consequences of failing to provide adequate mental health services.

**B.     The Intake Screening of Mr. Vinson.**

23.     On the evening of Sunday, August 14, 2022, Mr. Vinson was taken into custody for failing to appear in court for a misdemeanor offense. He was 24 years old.

24.     By all known accounts, Mr. Vinson was sober and compliant with the arresting officers throughout the process of his detention and booking.

25.     Upon arrival at the Norfolk City Jail, Mr. Vinson willingly submitted to a "Receiving Screening" that was administered by Ms. Rice, who was a licensed practical nurse and not a mental health professional.

26.     The Receiving Screening included a section entitled "Mental Health and Suicide Risk Screening." At the conclusion of this section, the screening form indicates, in bold red font, that: "**A 'YES' response to any Questions 10, 13, 14, 15, 17, 18: place on suicide watch & STAT referral to MHP**."

6

27.    Question 10 on the Mental Health and Suicide Risk Screening asks if the patient has "feelings that there is nothing to look forward to or feel hopelessness/helpless."

28.    Ms. Rice recorded that Mr. Vinson answered "Yes" to Question 10.

29.    Such a report of "hopelessness," even without any expression of suicidal ideations, particularly in the correctional context, is considered among the primary clinical risk factors for determining appropriate and urgent follow-up for suicide prevention.

30.    Accordingly, Mr. Vinson was a potentially suicidal inmate based on his expressed feelings of despondency and hopelessness. This is consistent with the recognition on the health screening form that feelings of hopelessness require putting the inmate on suicide watch and giving them an urgent referral to a mental health professional.

31.    Wellpath maintains a set of "Policies & Procedures" specific to the Norfolk City Jail that includes one entitled "Suicide Prevention and Intervention Program." That policy, consistent with the screening form mentioned above, indicates that "[s]uicide watch is to be initiated without delay when a potentially suicidal patient is identified."

32.    This same policy requires that those "patients are evaluated promptly by a Qualified Mental Health Professional (QMHP) who directs the intervention and arranges follow-up as needed."

33.    Ms. Rice also completed a Special Need Identification Form at or about the same time as the Receiving Screening. Therein, she recorded that Mr. Vinson told her that "he's depressed" and that "he feels no one cares about his feelings." Ms. Rice signed the form and another as-of-yet unidentified medical provider who, upon information and belief, was an employee of Wellpath, also signed the Special Need Identification Form.

34.     At the conclusion of the Receiving Screening, Ms. Rice had the opportunity to make certain recommendations and referrals as a result of her clinical findings. Contrary to the form's explicit instructions, Wellpath's own policies, and the applicable standard of care, Ms. Rice did and/or failed to do the following:

- In the section for monitoring, she did not select the option for "Suicide Watch" as she should have done;

- Under "Placement/Housing Recommendation," she selected the box for "General Population (GP)" in lieu of other options for closer observation and/or other safety precautions;

- A "Routine" referral to mental health was entered as opposed to one that was either "Emergent" or "Urgent," as required under existing policies and by the appropriate standard of care.

35.     Based on Wellpath's own policies, either an Emergent or an Urgent referral required an evaluation with a mental health professional within twenty-four hours.

36.     At the conclusion of this intake and referral process, Ms. Rice completed a "Mental Health Referral Form" on August 14, 2022.

37.     That form stated the following reason for referral: "Upon intake, pt reports c/o feeling depressed recently. Denies suicidal ideations."

38.     The form was e-signed by Ms. Rice on August 14, 2022 at 9:16 PM.

39.     As a result of Ms. Rice's flawed recommendations and contrary to Wellpath's own explicit policies and the standard of care, Mr. Vinson was placed into the general population of the Norfolk City Jail on August 14, 2022.

40.     The Mental Health Referral Form was also e-signed by Ms. Purkerson on August 15, 2022 at 11:19 AM, indicating that, by no later than that time, still more than seventy-two hours before Mr. Vinson's death, Ms. Purkerson was aware of his self-reported depression and his clinical factors requiring a suicide watch and urgent evaluation.

41.     According to a medical record dated the same day, which turned out to be forged, a Mental Status exam was shown to have taken place by Ms. Purkerson. Ms. Purkerson wrote as part of her forged recordation of this non-existent mental status exam, on a handwritten document entitled "Mental Health Structured Progress Note," that Mr. Vinson denied suicidal plans and told her he "would never hurt himself."

42.     Ms. Purkerson later admitted that this visit and exam never actually occurred and that the purported August 15, 2022 Mental Health Structured Progress Note was completely fabricated. She never examined Mr. Vinson, she never talked to Mr. Vinson, and Mr. Vinson did not say the things she recorded on the Mental Health Structured Progress Note.

43.     In reality, Mr. Vinson was not examined by any mental health professional during his four days at the Norfolk City Jail. According to Ms. Purkerson's explanation (after she admitted fabricating the Mental Health Structural Progress Note), she did not see and evaluate Mr. Vinson "because we were very short staffed and it was just me running the Mental Health Department."

**C.      *The Death of Mr. Vinson.***

44.     Mr. Vinson spent four days in the Norfolk City Jail's general population, not on suicide watch, without any of the appropriate suicide precautions, and without being seen by a mental health professional at any time after his admission.

45.     Even without an urgent referral to a mental health professional, the standard of care required someone with the hopelessness and helplessness expressed by Mr. Vinson to be seen by a mental health professional within that four-day window. This was not done.

46.     And even with inmates in the general population, the deputies on duty at the facility still had a responsibility to do "rounds" to check on each inmate at least once every thirty minutes.

47.     While making rounds, a deputy is required to look inside each occupied cell and note anything unusual. The deputy records that a round is complete by tapping his phone to an electronic receiver at one end of a cellblock and then again at a receiver at the other end.

48.     The deputy covering Mr. Vinson's cellblock during the day on August 18, 2022, was Deputy Howard.

49.     In Deputy Howard's own words, he was told to "not only just walk by, but to also look into the cells, meaning um, when you are walking by, not just walking, just you know, hitting the placards and just keep walking, . . . but in order to see what's going on in the cell, you gotta walk up to it and put eyes on people." Appropriate rounds for cells like the one Mr. Vinson was in required "you have to, you know, give a little bit more effort into looking into the cell" and "at least turn your head towards and look into" each cell.

50.     During his rounds at approximately 10:51am, Deputy Howard delivered lunch to Mr. Vinson and the two briefly interacted.

51.     At 11:08am, Deputy Howard checked in for rounds and walked past Mr. Vinson's cell without stopping or turning to look inside. Nevertheless, he tapped his phone on the electronic receiver, deceptively indicating he had made appropriate rounds.

52.     At 11:39am, Deputy Howard checked in for rounds and again and walked past Mr. Vinson's cell, again without stopping or even turning to look inside the cell. Once again, he tapped his phone on the electronic receiver, deceptively indicating that he had made appropriate rounds.

53.    At noon on August 18, 2022, due to a combination of depression, anxiety, isolation, and despair, Mr. Vinson was not of sound mind. In fact, as noted earlier, he was suicidal. Among other things, his mother was now homeless and he was incarcerated and powerless to help her. Shortly after noon, Mr. Vinson laid down on the floor and began experimenting with methods for hanging himself.

54.    By 12:04pm, Mr. Vinson, who was not of sound mind, was lying on the floor of his cell, rolling back and forth, repeatedly attempting to twist a fabric around his neck, as pictured below:



55.    At the same precise moment in time as the above picture, Deputy Howard passed by Mr. Vinson's cell while performing his rounds. He completed his walk of that hallway, without stopping or turning to look into Mr. Vinson's cell, and tapped his phone to the receiver to deceptively indicate that he had done appropriate rounds of that section of the jail.

56.    Mr. Vinson, as he was positioned on the floor, was easily visible from the aperture in the cell door.

57.     Deputy Howard later admitted that not every round he made on August 18, 2022 was a "quality round" and that he "might have short-changed or you know, didn't thoroughly look at some point." The truth is that he did not look into Mr. Vinson's cell at all during the ten "rounds" he made between delivering Mr. Vinson's lunch and delivering his dinner.

58.     Between 12:00 pm and 12:18 pm, Mr. Vinson, who remained of unsound mind, continued to lay and roll on the floor—attempting various means of tightening the fabric around his neck.

59.     At 12:18pm, Mr. Vinson stood up and began to attach a bed sheet to the top corner of his bunk. Next, he wrapped and tied the other end of the bedsheet around his neck. Tying these knots took approximately two minutes. He then proceeded to experiment for another minute or two with how to position his body weight.

60.     By 12:22pm, Mr. Vinson had secured the knots and found a way to hang himself from the bed such that he was unable to breathe. This method and manner of hanging would not have been possible if he had been placed on suicide watch.

61.     Less than one minute later, at 12:23pm, Deputy Howard walked the length of the corridor to escort an inmate two cells past Mr. Vinson's cell. Deputy Howard then returned alone down the cellblock, passing Mr. Vinson's door yet again. At neither pass did Deputy Howard stop or turn to look inside Mr. Vinson's cell.

62.     If Deputy Howard had looked inside Mr. Vinson's cell at 12:23pm, he would have clearly seen Mr. Vinson suspended in an unnatural position, seemingly floating off the end of the bed, with his arm dangling, and a white sheet visibly wrapped around his neck.

63.     At the exact moment Deputy Howard passed Mr. Vinson's cell, this is the scene that was visible through the door's window:

64.    Mr. Vinson remained in that exact position for another four hours.

65.    Deputy Howard next completed his rounds at 12:52pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

66.    At approximately 1:08pm, Deputy Howard walked the corridor outside Mr. Vinson's cell, but without stopping or turning to look inside.

67.    Deputy Howard next completed his rounds at 1:31pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

68.    At 1:33pm, Deputy Howard checked the trash can directly outside of Mr. Vinson's cell, but did not check on Mr. Vinson.

69.    At approximately 2pm, Deputy Howard walked the corridor outside Mr. Vinson's cell, but without stopping or turning to look inside.

70.     Deputy Howard next completed his rounds at 2:18pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

71.     Deputy Howard next completed his rounds at 2:46pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

72.     Deputy Howard next completed his rounds at 3:21pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

73.     Deputy Howard next completed his rounds at 4:01pm, deceptively tapping his phone on the electronic receiver, again without stopping or turning to look inside Mr. Vinson's cell.

74.     Finally, at 4:24pm, Deputy Howard returned to Mr. Vinson's cell to deliver his dinner. Only at this time did he look inside and find Mr. Vinson hanging. Despite the best efforts of a myriad of first responders, Mr. Vinson was declared dead in his cell.

### D.      The Cover-Up.

75.     Shortly after Mr. Vinson's death, Ms. Purkerson had a conversation with Ms. Peppenhorst in which she truthfully conveyed that she had not seen Mr. Vinson as a patient or evaluated his mental health concerns during the four days he was incarcerated.

76.     Upon information and belief, Ms. Purkerson is expected to testify that Ms. Peppenhorst concocted a cover-up, advising Ms. Purkerson that it was best for her to falsely report that she had seen Mr. Vinson the day after his initial intake screening. According to Ms. Purkerson, that cover-up unfolded in the following manner:

14

77.     At some time no later than August 22, 2022, Ms. Peppenhorst had Ms. Purkerson come to her office and, knowing that Ms. Purkerson should have urgently evaluated Mr. Vinson but did not, instructed her to create the fraudulent Mental Health Structured Progress Note falsely claiming that Mr. Vinson had in fact been evaluated by Ms. Purkerson the day after his admission and had told her that he "would never hurt himself."

78.     During that meeting, Ms. Peppenhorst advised Ms. Purkerson that this sort of thing was done all the time at the Norfolk City Jail. Ms. Purkerson signed the fraudulent note.

79.     Both Ms. Peppenhorst and Ms. Purkerson were employees of the Norfolk Sheriff's Office at the time these interactions occurred, but had both been employees of Wellpath until shortly before Mr. Vinson arrived at the Norfolk City Jail.

## III.     CAUSES OF ACTION

### COUNT I:  WRONGFUL DEATH – NEGLIGENCE
### (Ms. Rice & Wellpath—Vicariously)

80.     Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

81.     At all times relevant to this First Amended Complaint, Ms. Rice was acting as a nurse duly licensed to practice in Virginia. As such, she owed a duty to possess, apply, and use the skill and care of a reasonable and well-qualified nurse in the care and treatment of patients coming under her care.

82.     Ms. Rice owed a duty to exercise reasonable skill and care in her treatment of Mr. Vinson.

83.     Ms. Rice was negligent in the medical care and treatment rendered to Mr. Vinson as alleged herein, because she failed to render her services with that degree of care, skill, and attention required by the law. Because she was acting within the course and scope of her

employment with Wellpath when she treated Mr. Vinson, the negligence of Ms. Rice is imputed to Wellpath as a matter of law pursuant to the doctrine of *respondeat superior*.

84.    Specifically, Ms. Rice's negligence includes, but is not necessarily limited to, the following acts and omissions:

- Failing to recommend suicide watch monitoring;

- Failing to recommend STAT placement on Suicide Precautions;

- Recommending that Mr. Vinson be housed in the jail's general population;

- Failing to refer Mr. Vinson for an emergent or STAT mental health evaluation and treatment;

- Failing to otherwise properly follow-up on the feelings of depression and hopelessness expressed by Mr. Vinson during the Receiving Screening;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

85.    Upon information and belief, other employees and/or agents of Wellpath participated in, aided, or were party to these negligent acts and/or omissions. Wellpath, through its other agents and/or employees, additionally failed to properly assess, observe, manage, and/or treat Mr. Vinson's mental health and overall wellbeing between August 14 and August 18, 2022. Such other individuals include, but may not be limited to: 1) the medical provider who co-signed Mr. Vinson's Special Need Identification Form on August 15, 2022; 2) Ms. Purkerson, Mental Health Professional, to the extent she was acting as an agent or employee of Wellpath between August 14 and August 18, 2022; 3) any physician(s) responsible for supervising Ms. Rice as she performed Mr. Vinson's intake screening on August 14, 2022; 4) any physician(s) responsible for supervising the mental health services provided by Ms. Purkerson between August 14 and August 18, 2022; and/or 5) any physician(s) responsible for monitoring the mental health of inmates at Norfolk City Jail between August 14 and August 18, 2022.

86.     The negligence of Wellpath and Ms. Rice, as specified above and otherwise, proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

## COUNT II:  WRONGFUL DEATH – NEGLIGENCE
### (Ms. Peppenhorst & Wellpath—Vicarious & Direct Liability)

87.     Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

88.     Ms. Peppenhorst, in her role as Mental Health Coordinator for Wellpath from July 2017 until August 2022, had authority over Wellpath's work at the Norfolk City Jail to employ, direct, and/or discharge those individuals responsible for providing mental health services to inmates on behalf of Wellpath. Wellpath's entire role in the management of mental health services at the Norfolk City Jail was confided in her.

89.     As such, Ms. Peppenhorst acted with the requisite discretionary authority in these areas and her actions were, at all times relevant to this First Amended Complaint, authorized and ratified by Wellpath.

90.     Ms. Peppenhorst and Wellpath, as healthcare providers at the Norfolk City Jail, owed a duty to exercise reasonable skill and care in the provision of healthcare services to the inmates under their care, including Mr. Vinson.

91.     Ms. Peppenhorst and Wellpath, both vicariously and directly, breached the duty they owed to Mr. Vinson as alleged herein, because they created and maintained a system that caused healthcare services to be rendered without the degree of care, skill, and attention required by the law.

92.     Because she was acting within the course and scope of her employment with Wellpath, the negligence of Ms. Peppenhorst is imputed to Wellpath as a matter of law pursuant to the doctrine of *respondeat superior*.

93.     Because Ms. Peppenhorst had authority to employ, direct, and/or discharge those individuals responsible for providing mental health services to inmates, and because Wellpath's entire role in the management of mental health services at the Norfolk City Jail was confided in her, and because she acted with requisite discretionary authority and her actions were authorized and/or ratified by Wellpath, the actions of Ms. Peppenhorst alleged herein create direct liability for Wellpath.

94.     Specifically, Ms. Peppenhorst and Wellpath's negligence includes, but is not necessarily limited to, the following acts and omissions:

- Insufficient staffing of mental health professionals at the Norfolk City Jail;

- Expecting and/or demanding that mental health professionals evaluate and treat an unrealistic number of patients in the time allotted;

- Discouraging appropriate and individualized mental health evaluation and treatment of inmates;

- Recommending and/or directing the fabrication of official documents to cover-up for errors and/or shortcomings in the mental health services at the Norfolk City Jail;

- Lack of enforcement for policies and procedures designed to address the mental health of inmates.

95.     Ms. Peppenhorst directed the creation of the fake Mental Health Structured Progress Note as an effort to cover up the negligent and wrongful acts of herself and Wellpath. That document is evidence of her consciousness of guilt and an acknowledgment that she and others so grossly violated the standard of care in the treatment of Mr. Vinson that they were willing to lie on an official health form in an attempt to cover it up.

96.    The negligence of Ms. Peppenhorst and Wellpath, as specified above and otherwise, proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

### COUNT III:  WRONGFUL DEATH – GROSS NEGLIGENCE
### (Ms. Purkerson)

97.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

98.    At all times relevant to this First Amended Complaint, Ms. Purkerson was acting as a licensed professional counselor duly licensed to practice in Virginia. As such, she owed a duty to possess, apply, and use the skill and care of a reasonable and well-qualified licensed professional counselor in the care and treatment of patients coming under her care.

99.    Ms. Purkerson owed a duty to exercise reasonable skill and care and not to be grossly negligent in her treatment of Mr. Vinson.

100.    Ms. Purkerson was grossly negligent because her actions demonstrate indifference to Mr. Vinson and an utter disregard of prudence that amounts to a complete neglect of his safety. Her actions constitute the absence of even slight diligence and the want of even scant care.

101.    Specifically, Ms. Purkerson's gross negligence includes, but is not necessarily limited to, the following acts and omissions:

- Failing to properly respond to Mr. Vinson's expressions of depression and hopelessness recorded during the Receiving Screening and referenced on the Mental Health Referral Form, despite e-signing the Mental Health Referral Form three days before Mr. Vinson's death and, upon information and belief, having access to the underlying Receiving Screening information and/or other information about Mr. Vinson's condition;

- Failing to timely visit and/or assess Mr. Vinson despite such actual and/or constructive knowledge;

19

- Failing to seek correction of the inappropriate recommendations for Mr. Vinson's housing and medical care despite such actual and/or constructive knowledge;

- Completing a Mental Health Structured Progress Note without actually seeing Mr. Vinson as a patient;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

102.    Ms. Purkerson drafted and signed the fake Mental Health Structured Progress Note as an effort to cover up the wrongful acts of herself and/or others, which shows consciousness of guilt and is an acknowledgment that she so grossly and completely violated the standard of care in her treatment of Mr. Vinson that she was willing to lie on an official health form in an attempt to cover it up.

103.    Ms. Purkerson's gross negligence proximately caused the death of Mr. Vinson, thereby causing the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

## COUNT IV: WRONGFUL DEATH – GROSS NEGLIGENCE
### (Ms. Peppenhorst, Chief Handley & Sheriff Baron—Vicariously)

104.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

105.    Based on information and belief, at the time of Mr. Vinson's death, Ms. Peppenhorst, Chief Handley, and Sheriff Baron had supervisory and/or policy setting responsibility over the mental health care and related concerns of inmates at the Norfolk City Jail.

106.    As such, they had a duty to implement and/or enforce policies and procedures that would protect inmates from a known risk of suicide and ensure adequate staffing to meet the needs of inmates struggling with mental health issues.

107.    The provision of basic mental health services to an inmate experiencing feelings of depression and/or hopelessness is a serious medical need.

108.    Instead of implementing and enforcing policies and procedures to adequately address this need, and staffing appropriately for this need, Ms. Peppenhorst, Chief Handley, and Sheriff Baron created, fostered, and/or continued the inadequate staffing policies referenced throughout this First Amended Complaint, required medical professionals to operate in a way that could not meet the needs of inmates, and/or, upon information and belief, in the case of Ms. Peppenhorst, covered up known violations of policies and procedures by creating or directing the creation of fake medical records.

109.    Ms. Peppenhorst was fully aware of shortcomings in the mental health care for inmates when she started her position with the Norfolk Sheriff's Office because she had implemented and/or continued them throughout her time at Wellpath. Chief Handley became aware of those same shortcomings no later than April 28, 2022. Sheriff Baron became aware of those same shortcomings no later than May 9, 2022.

110.    Ms. Peppenhorst and Chief Handley were grossly negligent because their actions and/or omissions demonstrated indifference to Mr. Vinson and other inmates and an utter disregard of prudence that amounts to a complete neglect of their safety. Their actions and/or omissions, even after being warned by the psychiatrist who had been hired to treat the inmates and detainees, constitute the absence of even slight diligence and the want of even scant care towards Mr. Vinson.

111.    Ms. Peppenhorst, Chief Handley, and Sheriff Baron had knowledge of the conditions at the Norfolk City Jail that created a dangerous environment for those inmates

suffering from mental health issues, particularly the under-staffing and under-resourcing of mental health services, and were deliberately indifferent to the associated risk to Mr. Vinson.

112.    Specifically, Ms. Peppenhorst's and Chief Handley's gross negligence and deliberate indifference includes, but is not necessarily limited to, the following acts and omissions:

- A continuation of policies of understaffing and under-resourcing that made it impossible for medical professionals to adequately and appropriately address the mental health needs of inmates;

- Supervision of medical health professionals that included demands to treat patients in such high volume that proper care was impossible and/or imposing inappropriate requirements that treatment be based on factors other than the mental health and medical concerns of the inmates;

- Failure to enforce and/or follow existing Wellpath/Norfolk Sheriff's Office policies regarding screening and/or treating inmates with mental health problems and, in the case of Ms. Peppenhorst, covering up violations of such policy;

- Creating, contributing to, and furthering a culture that did not value the proper treatment and handling of inmates with mental health issues.

113.    Ms. Peppenhorst directed the creation of the fake Mental Health Structured Progress Note as an effort to cover up the gross negligent and wrongful acts of herself and others. That document is evidence of her consciousness of guilt and an acknowledgment that she and others so grossly violated the standard of care in the treatment of Mr. Vinson that they were willing to lie on an official health form in an attempt to cover it up.

114.    Ms. Peppenhorst's and Chief Handley's gross negligence proximately caused the death of Mr. Vinson and the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

115.    At all times relevant to this First Amended Complaint, Chief Handley was acting within the course and scope of his official duties for the Sheriff's office, as an agent for Sheriff

Baron, and Sheriff Baron is therefore responsible for his actions under the doctrine of *respondeat superior*.

## COUNT V: WRONGFUL DEATH – NEGLIGENCE, GROSS NEGLIGENCE & WILLFUL AND WANTON NEGLIGENCE
### (Deputy Howard & Sheriff Baron—Vicariously)

116.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

117.    At all times relevant to this First Amended Complaint, Deputy Howard was a sheriff's deputy for the Norfolk Sheriff's Office. As such, he had a duty to act with reasonable care toward the inmates coming under his supervision at the Norfolk City Jail.

118.    Deputy Howard owed a duty to exercise reasonable care and not to be grossly negligent or willfully and wantonly negligent in his actions towards Mr. Vinson.

119.    Deputy Howard was negligent because he failed to act with reasonable care in the performance of his duties towards Mr. Vinson.

120.    Deputy Howard was grossly negligent because his actions demonstrate indifference to Mr. Vinson and an utter disregard of prudence that amounts to a complete neglect of his safety. His actions constitute the absence of even slight diligence and the want of even scant care towards Mr. Vinson between 11am and 4pm on August 18, 2022.

121.    And, because Deputy Howard intentionally and deliberately chose not to look into Mr. Vinson's cell as required during his rounds between 11 am and 4 pm on August 18, 2022, despite his knowledge that doing so was required, in part, for the safety and well-being of the inmates, his actions constitute willful and wanton negligence. Deputy Howard acted in conscious disregard of the rights and safety of Mr. Vinson and/or acted with reckless indifference to the

23

consequences of his own actions while being aware, from his knowledge of existing circumstances and conditions, that his actions would lead to harm to Mr. Vinson.

122.    Specifically, Deputy Howard's gross negligence and willful and wanton negligence includes, but is not necessarily limited to, the following acts and omissions:

- Failing to perform quality rounds between 11am and 4pm on August 18, 2022, including intentionally failing to look inside Mr. Vinson's cell, despite deceptively indicating he did so by tapping his phone on the electronic receiver;

- Failing to visually check Mr. Vinson's cell between 11am and 4pm on August 18;

- Other negligent acts or omissions that may arise during discovery and litigation in this matter.

123.    Deputy Howard's gross negligence and willful and wanton negligence proximately caused the death of Mr. Vinson. If he had properly completed his rounds by looking inside Mr. Vinson's cell, he would have noticed Mr. Vinson's attempt at suicide before it was completed and in time to stop the attempt and get Mr. Vinson appropriate medical and mental health help. Deputy Howard's actions thereby caused the damages enumerated herein pursuant to Virginia Code § 8.01-50 et seq.

124.    Because he was acting within the course and scope of his employment as a deputy of Sheriff Baron, the negligence of Deputy Howard is imputed to Sheriff Baron as a matter of law pursuant to the doctrine of *respondeat superior*.

125.    Deputy Howard's actions and omissions alleged herein constitute willful, wanton, reckless, and conscious disregard of Mr. Vinson's rights, by reason of which Plaintiff is entitled to recover punitive damages.

## COUNT VI: §1983 DEPRIVATION OF CIVIL RIGHTS
### (Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley, and Sheriff Baron)

126.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full herein.

127.    Plaintiff brings this §1983 action against all named defendants in their individual capacities.

128.    At all times relevant to this First Amended Complaint, Ms. Peppenhorst (on behalf of Wellpath and/or the Norfolk Sheriff's Office), Chief Handley, and Sheriff Baron were responsible for the formulation and execution of policies regarding the custody, care and safekeeping of inmates and detainees at the Norfolk City Jail, particularly with regard to mental health issues and associated dangers. Deputy Howard was responsible for the implementation of one important aspect of that policy—inspection and monitoring of inmates' and detainees' cells for their own safety.

129.    All defendants named in this Count were operating under color of state law. In particular, Wellpath, and its employees such as Ms. Peppenhorst, were acting under color of state law because they were exercising powers that are traditionally the exclusive prerogative of the state, i.e. the provision of medical services to prison inmates and detainees.

130.    The right to reasonable mental health screening, treatment, and associated monitoring are all part of clearly established constitutional rights pursuant to the Fourth, Eighth and Fourteenth Amendments to the Constitution, and are rights that any reasonable medical care provider, director of mental health services, deputy, prison chief, sheriff, or other officer or employee in the position of these defendants would have known.

131.    In particular, Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley, and Sheriff Baron had a Fourteenth Amendment duty to protect people who are detained from a

25

known risk of suicide and, correspondingly, Mr. Vinson had a constitutional right pursuant to the Fourteenth Amendment to be provided basic mental health services while detained.

132.    The provision of basic mental health services to an inmate experiencing feelings of serious depression and/or hopelessness and helplessness is a serious medical need.

133.    Due to the actions and omissions of Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley, and Sheriff Baron as alleged herein, Mr. Vinson was detained under conditions posing a substantial risk of serious harm to his person.

134.    Wellpath, Ms. Peppenhorst, Chief Handley, Deputy Howard and Sheriff Baron had knowledge of those conditions, particularly the under-staffing and under-resourcing of mental health services at Norfolk City Jail, and the associated lack of monitoring, that posed a pervasive and unreasonable risk to detainees like Mr. Vinson and their response was so inadequate as to show deliberate indifference to the risk to Mr. Vinson.

135.    Upon information and belief, and at all times relevant to this First Amended Complaint, Wellpath, Ms. Peppenhorst, Chief Handley, Deputy Howard, and Sheriff Baron were acting under color of state law and within the scope of their official duties and employment. Their actions, as enumerated throughout this First Amended Complaint, directly violated the Constitutional rights of Mr. Vinson and created a culture of written and *de facto* policies, persistent and widespread practices, and customs that were a direct and proximate cause of the wrongful, unconstitutional and unlawful conduct of officers, staff and medical providers at the Norfolk City Jail, including, *inter alia:*

- The failure to adequately staff mental health services and train mental health providers so that the mental health services—including suicide prevention and monitoring, as well as associated mental health treatment—could meet the needs of the inmates;

- The supervision of mental health care providers in their care of inmates and detainees by persons without appropriate medical training;

- The failure to adequately monitor inmates and detainees with mental health issues to prevent suicide and to ensure that monitoring policies and procedures in place were followed;

- Directing a health care provider to cover up a negligent act with falsified medical records;

- Pressuring health care providers to make treatment decisions based on "mak[ing] the complaints stop" from inmates instead of sound clinical judgment;

- The failure to adequately train, supervise, instruct or monitor detention workers and medical care providers assigned to the jail in the proper methods and procedures for evaluating suicide risk in inmates and detainees;

- The failure to adequately train, supervise, instruct or monitor detention workers and medical care providers assigned to the jail in the proper methods or policies for assisting and treating suicide risk in inmates and detainees;

- The failure to ensure that that detention officers or medical care providers assigned to the jail complied with proper policies or procedures necessary to ensure that inmates and detainees were provided appropriate, necessary and adequate medical care and protections associated with mental health issues;

- The failure to ensure that detention officers or medical care providers assigned to the jail complied with existing policies and procedures, including policies and procedures for monitoring inmates and detainees;

- Other actions, policies, customs, and practices to be identified during the course of discovery or trial.

136. The deliberate indifference of Wellpath, Ms. Peppenhorst, Chief Handley, Deputy Howard, and Sheriff Baron was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

137. Had the appropriate staffing and mental health resources been provided to the Norfolk City Jail, or had the proper screening, training, policies or procedures been in place, or

27

had Mr. Vinson been appropriately monitored even while placed in the general population, Mr. Vinson would have received the treatment and supervision necessary to prevent suicide and save his life.

138.    The actions taken, the lack of enforcement of existing policies and the inadequacy and failures of the policies and procedures in place, all as enumerated above, proximately caused the death of Mr. Vinson.

139.    The actions of Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley, and Sheriff Baron constitute willful, wanton, reckless, and conscious disregard of Mr. Vinson's rights, by reason of which Plaintiff is entitled to recover punitive damages.

140.    The violations of Mr. Vinson's constitutional rights, as alleged herein, establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages, punitive damages, attorney's fees, and costs.

## IV.    DAMAGES & PRAYER FOR RELIEF

141.    Plaintiff hereby realleges and incorporates the preceding paragraphs as if set forth in full.

142.    As the result of the wrongful death of Mr. Vinson, his statutory beneficiaries have suffered severe and substantial damages, including, but not limited to, sorrow, mental anguish, and solace, including loss of society, companionship, comfort, guidance, kindly offices and advice, as well as reasonably expected income, services, protection, care, and assistance.

143.    In addition to the above damages, Plaintiff is entitled to an award of interest at the statutory rate from August 18, 2022, pursuant to Virginia Code § 8.01-382.

144.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

145.    On Count I, against Wellpath and Ms. Rice, jointly and severally, Plaintiff requests:

- Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

- Court costs and such other and further relief as the Court may deem just and proper.

146.    On Count II, against Wellpath and Ms. Peppenhorst, jointly and severally, Plaintiff requests:

- Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

- Court costs and such other and further relief as the Court may deem just and proper.

147.    On Count III, against Ms. Purkerson, Plaintiff requests:

- Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

▪ Court costs and such other and further relief as the Court may deem just and proper.

148.   On Count IV, against Ms. Peppenhorst, Chief Handley, and Sheriff Baron, jointly

and severally, Plaintiff requests:

▪ Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

▪ Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

▪ Postjudgment interest, at the statutory rate;

▪ Court costs and such other and further relief as the Court may deem just and proper.

149.   On Court V, against Deputy Howard and Sheriff Baron, jointly and severally,

Plaintiff requests:

▪ Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

▪ Punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00);

▪ Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

▪ Postjudgment interest, at the statutory rate;

▪ Court costs and such other and further relief as the Court may deem just and proper.

150.   On Count VI, against Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley

and Sheriff Baron, jointly and severally, Plaintiff requests:

▪ Compensatory damages, jointly and severally with those found liable under all other Counts, for the wrongful death of Mr. Vinson in the

30

amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00);

- Punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00);

- Prejudgment interest, at the statutory rate, from August 18, 2022 until the date of judgment;

- Postjudgment interest, at the statutory rate;

- Court costs and such other and further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

JAMIE VINSON, Administrator of the ESTATE OF PHILEMON S. VINSON

By: _____

Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer (VSB #80936)
Kevin A. Hoffman (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone:    (757) 301-9995
Facsimile:    (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: rosalyn.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

Plaintiff,

v.                                              Case No.: CL24-5057

WELLPATH LLC, et al.,

Defendants.

## ORDER GRANTING LEAVE TO AMEND COMPLAINT

THIS CAUSE came before the Court on the notice of Plaintiff's Motion for Leave to

Amend Complaint;

AND IT APPEARING to the Court that is it proper for Plaintiff to amend her Complaint

pursuant to Virginia Supreme Court Rule 1:8, in furtherance of the ends of justice, and without

objection;

WHEREFORE the Court, upon consideration of Plaintiff's Motion, is of the opinion that

Plaintiff's Motion for Leave to Amend Complaint should be GRANTED; it is hereby:

ADJUDGED, ORDERED, and DECREED that Plaintiff is given leave to file her First

Amended Complaint. The Clerk is DIRECTED to file the proposed First Amended Complaint

attached to Plaintiff's Motion and it is hereby considered so FILED as of the date of this Order.

Entered this **15th** day of **Aug**. , 2024.

_____
JUDGE

Everett A. Martin, Jr., Judge

WE ASK FOR THIS:

Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer (VSB #80936)
Kevin A. Hoffman (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Telephone:     (757) 301-9995
Facsimile:     (757) 233-1084
Email: randy.singer@singerhoffman.com
Email: rosalyn.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

SEEN AND NOT OBJECTED TO:


_____

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864) w/permission by Kevin A. Hoffman
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: 804-655-4830
Facsimile: 804-980-7819
Email: jmccray@wgmrlaw.com
Email: aaxselle@wgmrlaw.com
*Counsel for Wellpath*



Direct Dial: 757.598.5061
Email: kevin.hoffman@singerhoffman.com

August 15, 2024



**VIA HAND-DELIVERY**
Hon. George E. Schaefer, Clerk
Clerk's Office, Norfolk Circuit Court
150 St. Paul's Boulevard, 7th Floor
Norfolk, Virginia 23510-2773

    **Re:**    Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath, LLC, *et al.*
            **Case No.: CL24-5057**
            Our File No.: 8476-001

Dear Mr. Schaefer:

    Enclosed are six (6) service copies of the Amended Complaint filed in the above matter today, August 15, 2024. Please prepare service copies for the following defendants:

1.  Sharon Rice

    Serve at:    5 Sheila Drive
                 Hampton, Virginia 23664

2.  Anne Purkerson

    Serve at:    1444 Folly Road
                 Charleston, South Carolina 29412

3.  Cinclair Howard

    Serve at:    140 East Street
                 Norfolk, Virginia 23510

4.  Melissa Peppenhorst

    Serve at:    140 East Street
                 Norfolk, Virginia 23510

Hon. George E. Schaefer, Clerk
August 15, 2024
Page | 2

    5.  Wayne Handley
       Serve at:     306 Park Avenue
                       Buena Vista, Virginia 24416

    6.  Sheriff Joseph P. Baron

       Serve at:     811 E. City Hall Avenue
                       Norfolk, Virginia 23510

We will be using a private process server and ask that the Complaint be prepared for process to be picked up at the Court. Due to the upcoming statute of limitations date (8/18), we respectfully ask that the service copies be prepared for same day pick up or ready for pick up in the morning.

Thank you for your assistance in this matter. If you have any questions or need any additional information, please let me know.

With best regards, I am

                    Sincerely yours,

                    Kevin A. Hoffman

KAH/jdc
Enclosures

cc:    Angela B. Axselle, Esq. (via email only)
       Joel M. McCray, Esq. (via email only)



Direct Dial: 757.598.5061
Email: kevin.hoffman@singerhoffman.com

August 15, 2024

**VIA HAND-DELIVERY**
Hon. George E. Schaefer, Clerk
Clerk's Office, Norfolk Circuit Court
150 St. Paul's Boulevard, 7th Floor
Norfolk, Virginia 23510-2773

**Re:**   Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath, LLC, *et al.*
**Case No.: CL24-5057**
Our File No.: 8476-001

Dear Mr. Schaefer:

Enclosed are six (6) service copies of the Amended Complaint filed in the above matter today, August 15, 2024. Please prepare service copies for the following defendants:

1.  Sharon Rice

    Serve at:   5 Sheila Drive
    Hampton, Virginia 23664

2.  Anne Purkerson

    Serve at:   1444 Folly Road
    Charleston, South Carolina 29412

3.  Cinclair Howard

    Serve at:   140 East Street
    Norfolk, Virginia 23510

4.  Melissa Peppenhorst

    Serve at:   140 East Street
    Norfolk, Virginia 23510

SIGN FOR PICK UP

NAME: _JuluCooper_

DATE: _8/16/24_

AGENCY: _Singer Hoffman_

1209A LASKIN ROAD • VIRGINIA BEACH, VA 23451
PHONE: 757.301.9995 | FAX: 757.233.1084 | WWW.SINGERHOFFMAN.COM

VIRGINIA:   IN THE CIRCUIT COURT OF THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
Estate of Philemon S. Vinson

      Plaintiff,

v.                                                                          Case No: CL24-5057

WELLPATH LLC, et al.

      Defendants.

## O R D E R

    It appears that the judges of this Court are situated in respect to this case as to

render it improper, in their opinion, to preside at the trial. It is **ORDERED** that the Clerk

of this Court certify the same to the Chief Justice of the Supreme Court of Virginia. The

court requests that a judge be designated for such purpose.

                  ENTER:  This __15__ day of August, 2024.

                                  _____

                                Tasha D. Scott, Chief Judge



**FOURTH JUDICIAL CIRCUIT OF VIRGINIA**
**CIRCUIT COURT OF THE CITY OF NORFOLK**

EVERETT A. MARTIN JR.
JUDGE

150 ST. PAUL'S BOULEVARD, SUITE 800
NORFOLK, VIRGINIA 23510

August 28, 2024

Randy D. Singer, Esq.
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, Va.  23451

Angela Boice Axselle, Esq.
Wimbish, Gentile, McCray & Roeber, PLLC
8730 Stony Point Parkway, Suite 201
Richmond, Va.  23235

Jason R. Davis, Esq.
Kaufman & Canoles
150 West Main Street, Suite 2100
Norfolk, Va.  23510

   *Re:* *Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v.*
     *Wellpath, LLC, et al.*
     *Civil No.: CL24-5057*

Dear Counsel:

   Upon the filing of the amended complaint naming Sheriff Baron as a defendant, all of the judges of this court recused themselves, and we are awaiting a designation of a judge from the Supreme Court.  Until the Supreme Court makes a designation, the court cannot enter the order of withdrawal and substitution of counsel or any other order.

           Sincerely yours,

           Everett A. Martin, Jr.
           Judge

EAMJr/arc

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

| | | |
|---|---|---|
| JAMIE VINSON, Administrator of the ESTATE OF PHILEMON S. VINSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No: CL24-5057 |
| | : | |
| WELLPATH, LLC, | : | |
| SHARON RICE, | : | |
| ANNE PURKERSON, | : | |
| CINCLAIR HOWARD, | : | |
| MELISSA PEPPENHORST, | : | |
| WAYNE HANDLEY, | : | |
| AND | : | |
| SHERIFF JOSEPH P. BARTON, | : | |
| | : | |
| Defendants. | : | |

## MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL

COME NOW Joel M. McCray, Esq. and Angela Boice Axselle, Esq., both of Wimbish, Gentile, McCray & Roeber, PLLC, counsel for Wellpath, LLC, and move to (i) withdraw as counsel of record in this case, and (ii) substitute Jason R. Davis, Esq. and Lauren S. Kadish, Esq. of Kaufman & Canoles as counsel for Wellpath, LLC. With the agreement of Wellpath, LLC and Attorneys Davis and Kadish, Attorneys McCray and Axselle move to withdraw as counsel of record for Wellpath, LLC and substitute Attorneys Davis and Kadish as counsel of record for Wellpath, LLC.

WELLPATH, LLC

By Counsel

_(signature)_

Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: 804-655-4830
Facsimile: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com

## **CERTIFICATE**

I certify that a true and exact copy of the foregoing *Motion* was emailed and mailed, postage

fully pre-paid, this _29_ day of August, 2024, to:

Randy D. Singer, Esquire
Rosalyn K. Singer, Esquire
Kevin A. Hoffman, Esquire
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: 757-301-9995
randy.singer@singerhoffman.com
Rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
**Counsel for Plaintiff**

_(signature)_

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

| | |
|---|---|
| JAMIE VINSON, Administrator of the ESTATE OF PHILEMON S. VINSON,<br><br>    Plaintiff,<br><br>v.<br><br>WELLPATH, LLC,<br>SHARON RICE,<br>ANNE PURKERSON,<br>CINCLAIR HOWARD,<br>MELISSA PEPPENHORST,<br>WAYNE HANDLEY,<br>AND<br>SHERIFF JOSEPH P. BARTON,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:   Case No: CL24-5057<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL

This day came Joel M. McCray, Esq. and Angela Boice Axselle, Esq., both of Wimbish, Gentile, McCray & Roeber, PLLC, counsel for Wellpath, LLC, and moved to (i) withdraw as counsel of record in this case, and (ii) substitute Jason R. Davis, Esq. and Lauren S. Kadish, Esq. of Kaufman & Canoles as counsel for Wellpath, LLC. Therefore, the Court GRANTS the Motion and ORDERS that Joel M. McCray, Esq. and Angela Boice Axselle, Esq., both of Wimbish, Gentile, McCray & Roeber, PLLC, are withdrawn as counsel of record for Wellpath, LLC, and ORDERS that Jason R. Davis, Esq. and Lauren S. Kadish, Esq., both of Kaufman & Canoles, are substituted as counsel of record for Wellpath, LLC.

ENTERED: _____ day of _____, 2024.


_____
Judge, Norfolk Circuit Court

WE ASK FOR THIS:


_____
Joel M. McCray, Esquire (VSB #38116)
Angela Boice Axselle, Esquire (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: 804-655-4830
Facsimile: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com


SEEN AND AGREED:


_____  For Lauren Kadish
Jason R. Davis, Esquire
Lauren S. Kadish, Esquire
KAUFMAN & CANOLES
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: 757-624-3000
jrdavis@kaufcan.com
lskadish@kaufcan.com

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK**

JAMIE VINSON, Administrator of the  :
ESTATE OF PHILEMON S. VINSON,  :
                                 :
               Plaintiff,  :
v.  :                                           Case No. CL24-5057
                                 :
WELLPATH, LLC, et al.,  :
                                 :
             Defendants.  :

## DEFENDANTS BARON, HANDLEY, AND PEPPENHORST'S PLEA IN BAR AND DEMURRER TO FIRST AMENDED COMPLAINT

COME NOW the undersigned Defendants, Sheriff Joseph P. Baron, Wayne Handley, and Melissa Peppenhorst, by counsel, and file their Plea in Bar and Demurrer to plaintiff's First Amended Complaint, as follows:

### PLEA IN BAR

1.     Plaintiff's negligence claims against Defendants are barred by the doctrine of sovereign immunity.

2.     Plaintiff is barred from recovery for the wrongful death of her decedent pursuant to Va. Code § 8.01-50 because suicide is a criminal act under Virginia law.

### DEMURRER

1.     Plaintiff fails to state a claim upon which relief may be granted for negligence against Defendant Peppenhorst in Count II.

2.     Plaintiff fails to state a claim upon which relief may be granted for gross negligence against Defendant Peppenhorst or Defendant Handley in Count IV.

3.     Plaintiff fails to state a claim upon which relief may be granted against Sheriff Baron for gross negligence based on *respondeat superior* liability in Count IV.



FILED
SEP 0 5 2024
NORFOLK CIRCUIT COURT CLERK
BY_____D.C.

4.    Plaintiff fails to state a claim upon which relief may be granted against Sheriff Baron for negligence, gross negligence, or willful and wanton negligence based on *respondeat superior* liability in Count V.

5.    Plaintiff fails to state a claim upon which relief may be granted against Defendants pursuant to 42 U.S.C. § 1983 based on unconstitutional policies or procedures.

6.    Plaintiff fails to state a claim upon which relief may be granted against Defendants pursuant to 42 U.S.C. § 1983 under the Fourteenth Amendment for deliberate indifference to the provision of mental health services.

7.    Plaintiff has failed to state a claim upon which relief can be granted for willful and wanton negligence or deliberate indifference based upon sufficient facts to recover punitive damages.

8.    Plaintiff seeks punitive damages in excess of those allowed under Va. Code § 8.01-38.1.

9.    Plaintiff seeks damages in excess of those allowed against a Sheriff and his deputies under Va. Code § 2.2-1839.

SHERIFF JOSEPH P. BARON
WAYNE HANDLEY
MELISSA PEPPENHORST

By: _____
                Of Counsel

Jeff W. Rosen, Esq., VSB No. 22689
Lisa Ehrich, Esq., VSB No. 32205
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone/Fax: (757) 490-6253
jrosen@pendercoward.com
lehrich@pendercoward.com
*Counsel for Baron, Handley, and Peppenhorst*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September 2024, I will email a true copy of the foregoing **Defendants Baron, Handley, and Peppenhorst's Plea in Bar and Demurrer to First Amended Complaint** to the following:

Randy D. Singer, Esq. (VSB #26501)
Rosalyn K. Singer, Esq. (VSB #80936)
Kevin A. Hoffman, Esq. (VSB #87632)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Fax:    (757) 233-1084
randy.singer@singerhoffman.com
rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

Joel M. McCray, Esq. (VSB #38116)
Angela B. Axselle, Esq. (VSB #43864)
WIMBISH GENTILE MCCRAY & ROEBER PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: (804) 655-4830
Fax:    (804) 980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com
*Counsel for Wellpath*


Jeff W. Rosen, Esq., VSB #22689
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone/Fax: (757) 490-6253
jrosen@pendercoward.com
*Counsel for Baron, Handley, and Peppenhorst*

EXECUTIVE SECRETARY
KARL R. HADE

ASSISTANT EXECUTIVE SECRETARY &
LEGAL COUNSEL
EDWARD M. MACON

COURT IMPROVEMENT PROGRAM
SANDRA L. KARISON, DIRECTOR

EDUCATIONAL SERVICES
CAROLINE E. KIRKPATRICK, DIRECTOR

FISCAL SERVICES
BARRY M. WENZIG, DIRECTOR

HUMAN RESOURCES
RENÉE FLEMING MILLS, DIRECTOR

# SUPREME COURT OF VIRGINIA

JUDICIAL INFORMATION TECHNOLOGY
MICHAEL J. RIGGS, SR., DIRECTOR

JUDICIAL SERVICES
PAUL F. DELOSH, DIRECTOR

LEGAL RESEARCH
STEVEN L. DALLE MURA, DIRECTOR

LEGISLATIVE & PUBLIC RELATIONS
ALISA W. PADDEN, DIRECTOR

MAGISTRATE SERVICES
JONATHAN E. GREEN, DIRECTOR

OFFICE OF THE EXECUTIVE SECRETARY
100 NORTH NINTH STREET
RICHMOND, VIRGINIA 23219-2334
(804) 786-6455

## MEMORANDUM

TO: The Honorable H. Thomas Padrick, Jr., Retired Judge
Second Judicial Circuit

CC: The Honorable Tasha D. Scott, Chief Judge
The Honorable George E. Schaefer, Clerk
Ms. Elizabeth Amaya, Deputy Clerk

FROM: Kristi S. Wright

DATE: September 6, 2024

RE: Designation for Norfolk Circuit Court

---

Thank you for accepting the enclosed designation. You have agreed to hear a conflict case in the Norfolk Circuit Court.

Case Information:

**Jamie Vinson, Administrator of the Estate of Philemon S. Vinson v. Wellpath LLC, et al.**
(CL24005057-00)

By copy of this memorandum to Ms. Elizabeth Amaya, I am requesting that she contact you regarding this designation. Ms. Amaya may be reached at 757-664-4595.

Thank you for your willingness to assist.

KSW/mj

Enclosure

# Supreme Court of Virginia

## To All To Whom These Presents Shall Come — Greetings:

### Know Ye, That I, S. BERNARD GOODWYN,

Chief Justice of the Supreme Court of Virginia, by virtue of authority vested in me by law, do hereby designate —

THE HONORABLE  H. THOMAS PADRICK, JR., RETIRED JUDGE
OF THE SECOND JUDICIAL CIRCUIT
TO PRESIDE IN THE CIRCUIT COURT
OF THE CITY OF NORFOLK

In the case of

Jamie Vinson, Administrator of the Estate of Philemon S. Vinson
v.
Wellpath LLC, Sharon Rice, Anne Purkerson, Cinclair Howard, Melissa Peppenhorst,
Wayne Handley, and Sheriff Joseph P. Baron
CL24005057-00

To be heard on a date set by the Judge, and continuing
until the matters presented to him in this case
have been disposed of according to law.

In the place of
THE JUDGES OF THE FOURTH JUDICIAL CIRCUIT
who are so situated as to render it improper, in their opinion,
for them to preside at the trial of this case.

It is so Ordered.  Given under my hand and seal this 5th day of September 2024.

*S. Bernard Goodwyn*

_____(SEAL)
Chief Justice of the Supreme Court of Virginia

V I R G I N I A :

IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JAMIE VINSON, Administrator of the
ESTATE OF PHILEMON S. VINSON,

     Plaintiff.

v.                                             Case No. CL24-5057

WELLPATH LLC, et al.

     Defendants.

### DEFENDANT CINCLAIR HOWARD'S ANSWER TO FIRST AMENDED COMPLAINT

     In support of his Answer to the First Amended Complaint, defendant Cinclair Howard

("Howard" or "Defendant") by counsel, states as follows:

### I. PARTIES, JURISDICTION & VENUE

     1.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

     2.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

     3.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

     4.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

     5.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

     6.     Defendant is without sufficient information to either admit or deny the allegations

contained in this paragraph and, therefore, denies same.

7.    Admitted that Defendant was a deputy with the Norfolk Sheriff's Office and a resident of Virginia. The remaining allegations contained in this paragraph assert legal conclusions to which no response is required.

8.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

9.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

10.    Admitted that Sheriff Baron was the elected Sheriff of the City of Norfolk and a resident of Virginia. The remaining allegations contained in this paragraph assert legal conclusions to which no response is required.

11.    This paragraph states a legal conclusion to which no response is required.

## II. FACTUAL ALLEGATIONS

12.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

13.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

14.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

15.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

16.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

17.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

18.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

19.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

20.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

21.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

22.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

23.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

24.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

25.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

26.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

27.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

28.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

29.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

30.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

31.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

32.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

33.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

34.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

35.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

36.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

37.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

38.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

39.      Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

40.      Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

41.      Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

42.      Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

43.      Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

44.      It is admitted that Mr. Vinson was not on suicide watch.  Defendant is without sufficient information to either admit or deny the remaining allegations contained in this paragraph and, therefore, denies same.  Stating further, Defendant was not informed that Mr. Vincent was suicidal.

45.      This paragraph states a legal conclusion to which no response is required.  To the extent a factual response is deemed required, Defendant is without sufficient information to either admit or deny whether a mental health care professional saw Mr. Vincent.

46.      This paragraph states a legal conclusion to which no response is required.

47.      This paragraph states a legal conclusion to which no response is required.

48.      Admitted that Defendant was a deputy assigned to Mr. Vincent's cell block on August 18, 2022.

49.     This paragraph appears to quote Defendant's statements purportedly made in an interview.  The statements will speak for themselves, and any deviation form the exact quotes of the Defendant are denied.

50.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

51.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

52.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

53.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

54.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

55.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

56.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

57.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

58.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

59.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

60. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

61. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

62. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

63. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

64. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

65. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

66. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

67. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

68. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

69. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

70. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

71.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

72.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

73.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

74.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

75.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

76.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

77.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

78.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

79.     Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

### III. CAUSES OF ACTION
### COUNT I: WRONGFUL DEATH – NEGLIGENCE
### (Ms. Rice & Wellpath – Vicariously)

80.     Defendant realleges and incorporates by reference his responses to paragraphs 1-79 of the Amended Complaint as if fully stated herein.

81.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

82.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

83.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

84.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

85.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

86.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

## COUNT II: WRONGFUL DEATH – NEGLIGENCE
### (Ms. Peppenhorst & Wellpath – Vicarious and Direct Liability)

87.    Defendant realleges and incorporates by reference his responses to paragraphs 1-86 of the Amended Complaint as if fully stated herein.

88.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

89.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

90.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

91.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

92.    Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

93.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

94.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

95.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

96.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

## COUNT III: WRONGFUL DEATH – GROSS NEGLIGENCE
### (Ms. Purkerson)

97.  Defendant realleges and incorporates by reference his responses to paragraphs 1-96 of the Amended Complaint as if fully stated herein.

98.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

99.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

100.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

101.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

102.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

103.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

## COUNT IV: WRONGFUL DEATH – GROSS NEGLIGENCE
### (Ms. Peppenhorst, Chief Handley & Sheriff Baron – Vicariously)

104.  Defendant realleges and incorporates by reference his responses to paragraphs 1-103 of the Amended Complaint as if fully stated herein.

105.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

106.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

107.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

108.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

109.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

110.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

111.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

112.  Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

113. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

114. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

115. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

## COUNT V: WRONGFUL DEATH – NEGLIGENCE, GROSS NEGLIGENCE & WILLFULL AND WANTON NEGLIGENCE
### (Deputy Howard & Sheriff Baron – Vicariously)

116. Defendant realleges and incorporates by reference his responses to paragraphs 1-115 of the Amended Complaint as if fully stated herein.

117. Defendant admits that he was employed as a sheriff's deputy for the Sheriff of the City of Norfolk. The remaining allegations of this paragraph state legal conclusions to which no response is required.

118. This paragraph states legal conclusions to which no response is required.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied that Defendant was negligent. The remaining allegations of this paragraph state legal conclusions to which no response is required.

125. Denied.

## COUNT VI: §1983 DEPRIVATION OF CIVIL RIGHTS
### (Wellpath, Ms. Peppenhorst, Deputy Howard, Chief Handley, and Sheriff Baron)

126. Defendant realleges and incorporates by reference his responses to paragraphs 1-125 of the Amended Complaint as if fully stated herein.

127. This paragraph states legal conclusions to which no response is required.

128. This paragraph states legal conclusions to which no response is required.

129. This paragraph states legal conclusions to which no response is required.

130. This paragraph states legal conclusions to which no response is required.

131. This paragraph states legal conclusions to which no response is required.

132. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Defendant is without sufficient information to either admit or deny the allegations contained in this paragraph and, therefore, denies same.

138. Denied.

139. Denied.

140. Denied.

## IV. DAMAGES & PRAYER FOR RELIEF

141. Defendant realleges and incorporates by reference his responses to paragraphs 1-140 of the Amended Complaint as if fully stated herein.

142. Denied.

143. Denied

144. Denied.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

150. Denied.

## Affirmative Defenses

1.    Defendant relies on the defense of sovereign immunity.

2.    Defendant relies on the defense of qualified immunity.

3.    Plaintiff's claim is barred by the doctrines of illegality, and the decedent's assumption of the risk, willful, immoral and illegal acts, and/or contributory negligence.

4.    Plaintiff has failed to state a claim upon which relief may be granted for gross negligence, willful and wanton conduct, or deliberate indifference.

5.    Platinff has failed to state a claim upon which relief may be granted for punitive damages.

6.    Pursuant to Va. Code § 2.2-1839, the damages against the Defendant are limited to $1,500,000.

7.    None of the alleged actions, inactions, or indifference by Defendant was a proximate cause of Mr. Vinson's death.

8.    Defendant reserves the right to add such other and further defenses that may develop up and through the trial of this matter.

9.    Defendant demands a jury.

WHEREFORE, Defendant Cinclair Howard, by counsel, moves the Court to dismiss this

matter with prejudice, deny the plaintiff any award of damages, attorney's fees, or costs against

him, and grant any other relief as this Court deems to be just and proper.

Respectfully submitted,

CINCLAIR HOWARD

By Counsel

William W. Tunner, Esq. (VSB No. 38358)
Rachel W. Adams, Esq. (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Phone (804) 698-6205
Fax (804) 780-1813
Email: wtunner@t-mlaw.com
Email: radams@t-mlaw.com
*Counsel for Defendant Cinclair Howard*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September 2024, the foregoing was served by email and U.S. Mail, postage prepaid, on:

Randy D. Singer, Esq.
Rosalyn K. Singer, Esq.
Kevin A. Hoffman, Esq.
Singer Hoffman, LLC
1209A Laskin Road
Virginia Beach, VA  23451
Telephone: (757) 301-9995
Facsimile: (757) 233-1084
randy.singer@singerhoffman.com
rosalyn.singer@singerhoffman.com
kevin.hoffman@singerhoffman.com
*Counsel for Plaintiff*

Jeff W. Rosen, Esq.
Pender & Coward P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Telephone: (757) 490-6253
jrosen@pendercoward.com
*Counsel for Sheriff Joseph P. Baron*

Angela Axselle, Esq.
Wimbish Gentile McCray & Roeber, PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Telephone: (804) 655-4846
aaxselle@wgmrlaw.com
*Counsel for WellPath, LLC, Sharon Rice,*
*Anne Purkerson, Melissa Peppenhorst*
*and Wayne Handley*

William W. Tunner, Esq. (VSB No. 38358)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 698-6205
Fax: (804) 780-1813
Email: wtunner@t-mlaw.com
*Counsel for Defendant Cinclair Howard*